# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

<table>
<tr><td>

**PATRICK LENZ, Co-Executor of the Estate of Harry S. Stonehill**,

    *Plaintiff*,

**v.**

**CENTRAL INTELLIGENCE AGENCY**,

    *Defendant*.

</td><td>

**Case No. 1:20-cv-3327-RCL**

</td></tr>
</table>

## <u>MEMORANDUM OPINION</u>

In 2018, Pauline Dale Stonehill, acting as co-executor and co-administrator of the estate of her late husband, Harry S. Stonehill, submitted a Freedom of Information Act ("FOIA") request to the Central Intelligence Agency (CIA).  Compl., ECF No. 1.  This request, consisting of nine separate inquiries, seeks various records relating to the 1962 raid of Mr. Stonehill's businesses in the Philippines and the extent of the U.S. government's role in that raid.  The CIA failed to respond to Mrs. Stonehill's request, and in 2020, she brought this action to compel disclosure.  Mrs. Stonehill is now deceased, and the co-executor of Mr. Stonehill's estate, Dr. Patrick Lenz, was substituted as the named plaintiff.  ECF No. 68.

Over a period of several years, the CIA conducted a search that resulted in the identification of 36 documents, two of which the CIA released in part and 34 of which the CIA withheld in full pursuant to various FOIA exemptions.  Five of these documents were also referred to other agencies—the Internal Revenue Service (IRS), the Department of Justice Tax Division (DOJ Tax), and the Federal Bureau of Investigation (FBI)—and these agencies asserted more exemptions to protect their own equities.  Finally, the CIA issued a *Glomar* response, refusing to confirm or deny the existence of documents responsive to portions of Plaintiff's FOIA request.  Both parties have

moved for summary judgment.  Def.'s Mot. for Summ. J. ("CIA Mot."), ECF No. 43; Pl.'s Cross

Mot. for Summ. J. ("Pl.'s Mot."), ECF No. 50.

As explained below, the Court will **GRANT IN PART** and **DENY IN PART** Plaintiff's

motion for summary judgment and will **GRANT IN PART** and **DENY IN PART** the CIA's

motion for summary judgment.  The Court will **GRANT** the CIA's motion for summary judgment

regarding its use of *Glomar* and will **DENY** Plaintiff's motion on that issue.  But the Court will

**DENY** the CIA's motion for summary judgment with respect to its use of FOIA exemptions to

withhold public documents and with respect to the adequacy of its *Vaughn* index.  Specifically,

the Court will **ORDER** the CIA to produce the public documents that Plaintiff already identified

(Documents 3–15 and Documents 17–22) and submit an updated *Vaughn* index with requisite

specificity to justify any remaining redactions on those pages.  For the documents which Plaintiff

did not yet identify (Document 16 and Documents 23–36), the Court will **ORDER** the CIA to

submit an updated *Vaughn* index with adequate descriptions, or otherwise produce the documents

in full.  And for Documents 1 and 2, the only two documents released in part, the Court will

**ORDER** the CIA to update its *Vaughn* index with adequate descriptions to justify remaining

redactions.

## I.    BACKGROUND

This case forms part of an extensive history of litigation pertaining to the 1962 Stonehill

raids in the Philippines.  The Court will provide a brief overview for the purposes of resolving the

pending motions.

### A.  Factual History

In the 1950s and early 1960s, Harry S. Stonehill and his business partner, Robert P. Brooks,

established a vast business empire of sixteen different corporations in the Philippines, "the most

prominent" of which was the United States Tobacco Company.  *United States v. Est. of Stonehill*,

660 F.3d 415, 418 (9th Cir. 2011).   Amid allegations of illegal activity within the companies, the FBI and the Philippine National Bureau of Investigation (NBI) began to investigate Stonehill's businesses.  *Id.* at 418–419.   On March 3, 1962, the NBI carried out a "massive" raid on the Stonehill businesses in the Philippines, conducted by approximately 200 NBI agents and targeting approximately seventeen different Stonehill corporations.  *Id.* at 419.   Many of the seized documents seized in the course of these raids were shared with U.S. authorities, "and eventually led to a $17.6 million tax judgment in the Ninth Circuit against Stonehill and his partner that 'economically destroyed Stonehill.'"  *Stonehill v. I.R.S.*, No. 19-cv-3644 (RDM), 2021 WL 1092166, at *1 (D.D.C. Mar. 22, 2021) (internal citations omitted); Compl. ¶ 22.

In the decades since, the Stonehill family has fought to reverse that judgment.  Most relevant to the instant case is the Ninth Circuit's ruling on Mr. Stonehill's Rule 60(b)(6) motion (referred to throughout this opinion as the "Rule 60(b) litigation").  In 2000, Mr. Stonehill moved to set aside the tax judgment pursuant to Federal Rule of Civil Procedure 60(b)(6), arguing that the U.S. government had misrepresented the extent of their involvement in the raids and violated the Fourth Amendment to obtain the judgment.  *Stonehill*, 660 F.3d at 420.  Mr. Stonehill then passed away in 2002.  After a protracted litigation cycle, in 2011, the Ninth Circuit denied Mr. Stonehill's Rule 60(b) motion, stating that although he had demonstrated "misconduct" by the government, "it [was] insufficient to demonstrate fraud on the court."  *Id.* at 417.

The Stonehill family has continued to seek information regarding the Stonehill raids in numerous FOIA requests and subsequent lawsuits, bringing this Court to the current action.

### B.  Procedural History

On October 11, 2018, Mrs. Stonehill submitted a FOIA request to the CIA seeking records "concerning Harry S. Stonehill, Menhart Spielman, Jose G. Lukban, and Damaso A Nocon from the time period January 1, 1955, through January 1, 1974, including but not limited to:

1. All records related to or communications to or from C.I.A. Director John H. Richardson;

2. All records related to and/or communications to or from Menhart Spielman;

3. All records related to and/or communications to or from CIA agent Joseph (John J.) McGee including but not limited to notes or memoranda prepared about the conference held on February 21, 1966 to interview Mr. McGee at the IRS Commissioner's office and the February 7, 1962 memorandum from FBI agent Robert Hawley discussed during that conference;

4. All records related to and/or communications to or from Damaso [Danny] A. Nocon, Philippine National Bureau of Investigation (N.B.I.);

5. All records related to or communication to or from N.B.I. Director Jose G. Lukban;

6. All records related to or communications to or from C.I.A. Deputy Director Don Richardson;

7. All records related to United States A.I.D. Public Safety Group in Manila regarding wiretapping and/or the raids conducted on Harry S. Stonehill's businesses on March 2-3, 1962;

8. All records, including transcripts, relating to CIA, FBI or NBI wiretapping of Harry Stonehill, Robert P. Brooks, Menhart Spielman and the U.S. Tobacco Company in the Philippines; and

9. All records relating to the CIA's advice and assistance to the Philippine National Bureau of Investigation (NBI) agents related to various investigative techniques including the use and installation of wiretap equipment and funding and payments to Joseph J. Lukban or Damaso Nocon."

ECF No. 1-5.  On November 16, 2020, having received no response from the CIA, Mrs. Stonehill brought this action.  Compl. ¶¶ 39–40.  The CIA answered the Complaint on December 22, 2020.  ECF No. 8.  The parties then filed status reports throughout 2021, 2022, and 2023 regarding the status of the search and the CIA's referrals to other agencies.

On January 6, 2022, the CIA issued a final response to Mrs. Stonehill's FOIA request regarding the CIA's review of responsive documents.  CIA Mot., Statement of Undisputed Material Fact ¶ 4.  The CIA determined that two documents could be released in part, and all other

responsive records must be denied in their entirety.  *Id.*  The CIA also asserted a *Glomar* response, declining to confirm or deny the existence of records pertaining to several of the enumerated requests.  *Id*.  Lastly, the CIA noted that several documents belonging to other government agencies (now identifiable as Documents 3-7 on the *Vaughn* index, ECF No. 43-2) were located and were referred to those agencies.  *Id.*

On April 13, 2022, the CIA referred Documents 3–7 to DOJ Tax.  *Id* ¶ 5.  On December 9, 2022, in a joint status report, the CIA noted that DOJ Tax further referred those five records to the IRS for additional review.  *Id* ¶ 6.  On June 7, 2023, the CIA submitted another status report in which it noted that the IRS determined to withhold Documents 3–7 in full and had also referred these documents to the FBI.  *Id.* ¶ 7.  On July 14, 2023, the FBI informed the IRS that it was asserting several additional FOIA exemptions.  *Id.* ¶ 8.  Also on July 14, 2023, the CIA provided a *Vaughn* index to Mrs. Stonehill, listing the exemptions invoked for all 36 documents.  *Id.* ¶ 8.

Mrs. Stonehill died in October 2023.  Dr. Patrick Lenz, co-executor of Mr. Stonehill's estate, was substituted as the named plaintiff.  Order Granting Mot. for Substitution of Parties, ECF No. 68.

On September 20, 2023, the CIA filed a motion for summary judgment.  Def.'s Mot. for Summ. J. ("CIA Mot."), ECF No. 43.  On October 30, 2023, Plaintiff filed a cross-motion for summary judgment.  Pl.'s Cross Mot. for Summ. J. ("Pl.'s Mot."), ECF No. 50.  The CIA replied on January 1, 2024.  Reply to Opp. to Def.'s Mot. for Summ. J. ("CIA Reply"), ECF No. 70.  Plaintiff replied on February 1, 2024.  Reply to Opp. to Pl.'s Mot. for Summ. J. ("Pl.'s Reply"), ECF No. 72.  The motions are ripe for this Court's review.

## II.   LEGAL STANDARDS

### A.  The Freedom of Information Act

The FOIA provides an avenue for anyone to request and receive the disclosure of government records. 5 U.S.C. § 552. "FOIA mandates a 'strong presumption in favor of disclosure.'" *A.C.L.U. v. U.S. Dep't of Just.*, 655 F.3d 1, 5 (D.C. Cir. 2011) (quoting *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 32 (D.C. Cir. 2002)).  Therefore, "agencies may withhold only those documents or portions thereof that fall under one of nine delineated statutory exemptions." *Elliott v. U.S. Dep't of Agric.*, 596 F.3d 842, 845 (D.C. Cir. 2010).  But because the FOIA mandates a presumption of disclosure, an agency withholding material pursuant to FOIA exemptions "bears the burden of showing that withheld material falls within the asserted exemption." *Id.* (citing 5 U.S.C. § 552(a)(4)(B)).  In 2016, Congress passed the FOIA Improvement Act, which mandated that agencies may only withhold information under a FOIA exemption if the agency "reasonably foresees that disclosure would harm an interest protected by an exemption" or if "disclosure is prohibited by law[.]"  5 U.S.C. § 552(a)(8)(A)(i); *Reps. Comm. for Freedom of the Press v. Fed. Bureau of Investigation*, 3 F.4th 350, 357–58 (D.C. Cir. 2021).

### B.  Summary Judgment

A court may grant summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  FOIA cases are usually decided on summary judgment motions.  *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009).  Where the party seeking disclosure challenges an agency's withholding of records, "the agency is entitled to summary judgment if no material facts are in dispute and if it demonstrates that each document that falls within the class requested . . . is wholly exempt from [the FOIA's] disclosure requirements." *Shapiro v. Dep't of Just.*, 34 F. Supp. 3d 89, 94 (D.D.C. 2014) (citing *Moayedi v. U.S. Customs & Border Prot.*, 510

F. Supp. 2d 73, 78 (D.D.C. 2007). An agency meets this burden if any combination of its *Vaughn* index, affidavits, or declarations "describe[s] the justifications for nondisclosure with reasonably specific detail, demonstrate[s] that the information withheld logically falls within the claimed exemption, and [is] not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (citation omitted). An agency's justifications will be upheld if they are "logical" or "plausible." *Wolf v. Cent. Intel. Agency*, 473 F.3d 370, 375 (D.C. Cir. 2007) (citations omitted).

Furthermore, a court deciding summary judgment motions in a FOIA dispute "must make specific findings" as to whether any "reasonably segregable portion of a record" is non-exempt and releasable "[b]efore approving the application of a FOIA exemption." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1116 (D.C. Cir. 2007) (citing 5 U.S.C. § 552(b)). A court must also determine whether an agency has shown "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).

If an agency affidavit or declaration is "conclusory," "contradicted in the record[,]" or there is "evidence in the record of agency bad faith," then summary judgment is not appropriate and a court may grant *in camera* review as a "last resort." *Hayden v. Nat'l Sec. Agency/Cent. Sec. Serv.*, 608 F.2d 1381, 1387 (D.C. Cir. 1979). The Court has "'broad discretion' to decide whether *in camera* review is necessary." *100Reporters LLC v. U.S. Dep't of Just.*, 248 F. Supp. 3d 115, 166 (D.D.C. 2017) (citation omitted). "[W]hen the dispute turns on the contents of the withheld documents, and not the parties' interpretations of those documents, in camera review may be more appropriate." *Quinon v. F.B.I.*, 86 F.3d 1222, 1228 (D.C. Cir. 1996). But reviewing documents *in camera* is no "substitute for the government's obligation to provide detailed public indexes and

justifications whenever possible." *Lykins v. U.S. Dep't of Justice*, 725 F.2d 1455, 1463 (D.C. Cir. 1984).

### III.    DISCUSSION

**A. The CIA's Glomar Response**

The CIA asserted a *Glomar* response, also known as a "neither confirm nor deny" (NCND) response, for the inquiries numbered 2, 4, 6, and 9 of Plaintiff's FOIA request.  CIA Mot. at 2; Declaration of CIA Information Review Officer Mary C. Williams, ECF No. 43-1 ("Williams Dec."), ¶¶ 16, 39.[1]  Specifically, the CIA argues that responding to items 6 and 9 would reveal a classified and statutorily protected fact under Exemptions 1 and 3.  *Id.*  The CIA also argues that responding to items 2 and 4 would do the same "to the extent that those items implicate records that might reveal whether there is a classified or otherwise unacknowledged association with the Agency."  CIA Mot. at 5.  Plaintiff responds that a *Glomar* response is improper because the CIA has already officially acknowledged the existence of records responsive to these inquiries.  As the Court will explain, given the stringent requirements of the "official acknowledgment" exception and Plaintiff's failure to meet this burden, the CIA properly asserted *Glomar*.

A *Glomar* response, under Executive Order 13526 § 3.6(a), is when a government agency "refuse[s] to confirm or deny the existence of records where to answer the FOIA inquiry would cause harm cognizable under an FOIA exception."  75 Fed. Reg. 707 (Dec. 29, 2009); *see also Gardels v. Cent. Intel. Agency*, 689 F.2d 1100, 1103 (D.C. Cir. 1982)*; Miller v. Casey*, 730 F.2d 773, 776–77 (D.C. Cir.1984); *Phillippi v. Cent. Intel. Agency*, 546 F.2d 1009, 1012 (D.C. Cir. 1976).  Such a response is proper if the fact of the existence or nonexistence of agency records

---

[1] Plaintiff briefly challenges the CIA's adequacy of the search, noting that "CIA did not conduct a search for [2, 4, 6, and 9]" by asserting a *Glomar* response.  Pl.'s Mot. at 38; *see also* Pl.'s Reply at 24.  As the parties note, because the very nature of a *Glomar* response inherently means that the agency will not conduct a search for those items (and therefore, if a *Glomar* response was inappropriate, then the agency's failure to search was necessarily inadequate), the Court will address Plaintiff's adequacy challenge as folded into their *Glomar* challenge.

falls within one of the FOIA exemptions.  *See, e.g.*, *Hunt v. Cent. Intel. Agency*, 981 F.2d 1116, 1118 (9th Cir. 1992); *Phillippi*, 546 F.2d at 1011 (acknowledging CIA refusal to confirm or deny existence of records regarding activities of ship named Hughes Glomar Explorer.)  In determining whether the existence or nonexistence of these records fits under a FOIA exemption, courts apply the general exemption review standards established in non-*Glomar* cases.  *See, e.g.*, *Gardels*, 689 F.2d at 1103–05.

Regarding Exemption 1's applicability to support a *Glomar* response, the CIA argues that the existence or nonexistence of the requested items (6 and 9 in full, and 2 and 4 "to the extent" that those items implicate records revealing a classified or unacknowledged association with the CIA) is properly classified pursuant to sections 1.4(c) and 1.4(d) of Executive Order 13526. Section 1.4(c) protects from disclosure "intelligence activities (including covert action), intelligence sources or methods, or cryptology," and Section 1.4(d) protects "foreign relations or foreign activities, including confidential sources."  In other words, the CIA asserts that confirming or denying the existence of records responsive to items 6 and 9, and 2 and 4 to an extent, could disclose intelligence activities, sources, and methods, or foreign relations or activities, in such a way that "could reasonably be expected to cause damage to national security."  CIA Mot. at 6; Williams Dec. ¶ 36.  Additionally, the CIA argues that Exemption 3 supports a *Glomar* response to these same four inquiries.  CIA Mot. at 7.  Exemption 3 protects information that is already exempt by statute, and the CIA argues that acknowledging the existence or nonexistence of records responsive to items 6 and 9, and classified associations to the people referenced in items 2 and 4,

would reveal intelligence sources and methods protected under the National Security Act, 50 U.S.C. § 3001 *et seq.* *Id.*

### 1. Official Acknowledgment

Plaintiff challenges CIA's *Glomar* response to each of the four inquiries, arguing that "information regarding each of those items had already been officially acknowledged and the CIA has previously acknowledged an intelligence interest in those individuals." Pl.'s Mot. at 36.

An agency may not assert a *Glomar* response when it has already officially "disclosed the fact of the existence (or nonexistence) of responsive records, since that is the purportedly exempt information that a *Glomar* response is designed to protect." *A.C.L.U. v. Cent. Intel. Agency*, 710 F.3d at 427 (citing *Wolf*, 473 F.3d at 379-80). The existence of records is officially acknowledged if "(1) the information requested [is] as specific as the information previously released; (2) the information requested [matches] the information previously disclosed; and (3) the information requested [has already] been made public through an official and documented disclosure." *A.C.L.U. v. U.S. Dep't of Def.*, 628 F.3d 612, 620–21 (D.C. Cir. 2011). The prior disclosure need only establish the *existence* (or not) of records responsive to the FOIA request, even if the *content* of the records themselves has not been disclosed. *A.C.L.U. v. Cent. Intel. Agency*, 710 F.3d at 427. "To overcome an agency's *Glomar* response, the plaintiff must pinpoint an agency record that both matches the plaintiff's request and has been publicly and officially acknowledged by the agency." *Montgomery v. I.R.S*, 356 F. Supp. 3d 74, 82 (D.D.C. 2019). "The D.C. Circuit has repeatedly emphasized the importance of applying this test with rigor, because 'the fact that information exists in some form in the public domain does not necessarily mean that *official* disclosure will not cause harm cognizable under a FOIA exemption." *James Madison Project v. Dep't of Just.*, 330 F. Supp. 3d 192, 204 (D.D.C. 2018) (citing *Wolf*, 473 F.3d at 378) (emphasis added).

To challenge the CIA's *Glomar* response, Plaintiff cites to various exhibits as alleged examples of the CIA's prior official acknowledgments and directs the Court to the uploaded exhibits in full.  Pl.'s Mot. at 26-29, 36; Pl.'s Reply at 19; ECF Nos. 51-8, 51-9.  However, it is not clear to this Court where Plaintiff got each of their exhibits, as the CIA also observes in its reply.  *See* CIA Reply at 9.  Plaintiff states that "[d]ocuments pertaining to each of these individuals [named in the FOIA request] and their relationship to the CIA have already been released to plaintiff in the Rule 60(b)(6) proceeding," and that "each individual [to which the CIA has asserted a *Glomar* response] has been identified as having a close connection to the CIA or was employed by the CIA," with no citation to any exhibit.  Pl.'s Mot. at 36.  In Plaintiff's reply brief, Plaintiff says "the Exhibits submitted by Plaintiff included the unredacted text of the documents withheld in full by the CIA in this action which were approved for release by the CIA in the Rule 60(b) proceeding."  Pl.'s Reply at 19.  Based on these statements, the Court concludes that the exhibits Plaintiff is using to support its theory of official acknowledgment by the CIA all came from discovery in the Rule 60(b)(6) litigation.

Without more from Plaintiff to support their official acknowledgment claim, however, their argument fails.  Plaintiff's characterization of the record is not enough to meet the D.C. Circuit's stringent official acknowledgment test.  The record appears to be documents provided in discovery by a different agency—namely, the IRS in the Rule 60(b) proceeding, to which the CIA was not a party.  It is well-established that "a plaintiff cannot meet the burden of demonstrating prior disclosure when the prior disclosure . . . was made by someone other than the agency from which the information is sought."  *Jud. Watch, Inc. v. Dep't of Just.*, 619 F. Supp. 3d 69, 76 (D.D.C. 2022) (Lamberth, J.).  "[C]onfirmation that an agency has responsive records (or not) by the agency itself is different from statements to that effect by other sources—even trusted government

11

sources—because confirmation by the agency itself removes 'any lingering doubts' on the issue." *Connell v. Cent. Intel. Agency*, 110 F.4th 256, 270 (D.C. Cir. 2024) (quoting *Knight First Amend. Inst.*, 11 F.4th at 816).

Plaintiff argues that the CIA participated in the Rule 60(b) proceeding, so therefore, disclosures in that litigation can be attributed to the CIA. *See* Pl.'s Reply at 20–21. Specifically, Plaintiff states that the CIA "attended an ex parte meeting with [Judge Panner, overseeing the discovery dispute] and the Tax Division to review the unredacted text" in responsive documents and agreed to release information "knowing that this information would be publicly available." *Id.* At the outset, the Court declines to conclude that this alleged involvement is enough to ascribe these disclosures to the CIA, without any authority cited by Plaintiff for the Court to make this leap. But moreover, no matter what agency they are ascribed to, these documents do not appear to be "official" statements. FOIA litigants have attempted to rely on press conferences, declarations and information reports, and tweets from the President as official acknowledgments, with limited success. *See, e.g., Knight First Amend. Inst. v. CIA*, 11 F.4th 810 (D.C. Cir. 2021); *Moore v. CIA*, 666 F.3d 1330 (D.C. Cir. 2011); *Leopold v. CIA*, 987 F.3d 163 (D.C. Cir. 2021). But there is little precedent to support the idea that documents, produced in discovery in an earlier and distinct lawsuit, can suffice as an official statement to undermine a *Glomar* response. The most relevant judicial treatment of this issue in this District that the Court has identified is an implication from *Eddington v. U.S. Dep't. of Just.*, 581 F. Supp. 3d 218, 231 (D.D.C. 2022), in which that court observed that "the [agency] never provided any records in discovery during the litigation. Thus, the cited information from [that litigation] does not amount to an 'official acknowledgment' that responsive records exist in [the agency's possession]." This sentence could be construed to indicate that, if records *were* provided by the agency during discovery, that could

12

amount to an official acknowledgement.  But, even if read this way, Plaintiff's situation is distinguishable—here, the CIA did not "provide records" in the Rule 60(b)(6) litigation, but rather, was consulted by the IRS for redactions.

Lastly, the Court concludes that in any event, Plaintiff fell short of meeting their burden to "pinpoint" an official agency record that contains information that "matches" information requested under FOIA.  *Montgomery*, 356 F. Supp. 33 at 82.  These requirements are "exacting," and "[p]rior disclosure of similar information does not suffice; instead, the specific information sought by the plaintiff must already be in the public domain by official disclosure."  *Connell*, 110 F.4th at 264 (quoting *Wolf*, 473 F.3d at 378) (internal quotation marks omitted) (emphasis in original).  Plaintiff's arguments are conclusory, failing to identify passages from the Rule 60(b) litigation documents that the CIA specifically reviewed or released, and failing to compare those portions to the language of their FOIA request.  Therefore, Plaintiffs have not met the stringent burden of the official acknowledgment test.  The Court will grant the CIA's motion regarding its *Glomar* response to items 2, 4, 6, and 9 of Plaintiff's FOIA request.

### B.  Documents 1–36, Withheld by the CIA Under Exemptions 1, 3, and 5

For the requests to which the CIA did not assert a *Glomar* response, the CIA conducted a search which led to the identification of 36 documents in total.  The CIA withheld two of the documents in part (Documents 1–2) and withheld 34 in full (Documents 3–36).  CIA Mot. at 2. The CIA used combinations of Exemptions 1, 3, and 5 to withhold these documents—of note, Exemption 1 was used for nearly every document.  The CIA has submitted a *Vaughn* index for a description of information withheld and has submitted the documents for *in camera* review.

At the outset, it is critical (and confounding) to observe that Plaintiff already possesses many of the documents that the CIA is now withholding in full, and these documents are publicly accessible on PACER.  *See* ECF Nos. 51-2, 51-3, 51-4, 51-5, 51-6.  Plaintiff noted this throughout

their motions and attached the documents as exhibits to their summary judgment motion.  *See* Pl.'s

Mot. at 11 (Documents 3–7 "are attached in largely unredacted form in Exhibit 1(c)-1(g)"); Pl.'s

Mot. at 17 (Documents 8–22 "are attached hereto in unredacted form in Exhibit 1); Pl.'s Mot. at

17–24 (proceeding document-by-document to compare the CIA's *Vaughn* index to Plaintiff's

documents already in their possession uploaded onto PACER).  Plaintiff states that they have

already obtained many of these documents "in response to FOIA requests and litigation."  Pl.'s

Mot. at 30.  This makes for a strange posture in this case: the CIA is denying documents in full,

but Plaintiff already has versions of them (and has uploaded them to PACER), so Plaintiff is

contesting redactions in the copies they already have.  Even more strangely, the CIA does not even

address this unusual situation in their reply—the CIA merely repeats their argument that their

*Vaughn* index is adequate, and that these documents are not subject to automatic declassification.

CIA Reply 7–8, 10–11.

This Court will explain the CIA's bases for invoking Exemptions 1 and 3 (and Exemption

5, *infra*, for several specific documents), explain Plaintiff's challenges, and conclude that these

Exemptions were not properly asserted given that many of these documents, in some form, are

already public.[2]  Additionally, the CIA has provided an inadequate *Vaughn* index, falling short of

the specificity the D.C. Circuit requires.

### 1.  The CIA's Use of Exemption 1

Exemption 1 protects from disclosure any information that is classified "under criteria

established by an Executive order to be kept secret in the interest of national defense or foreign

---

[2] This conclusion is not in conflict with the *Glomar* analysis, *supra*.  The existence of records in the public domain is not enough to overcome a *Glomar* response, because the litigant must also meet all prongs of the official acknowledgment test.  But for documents that an agency identifies and seeks to withhold in response to a FOIA request, "an exemption can serve no purpose once information—including sensitive law-enforcement intelligence—becomes public."  *Pike v. U.S. Dep't of Just.*, 306 F. Supp. 3d 400, 410 (D.D.C. 2016), *aff'd*, No. 16-5303, 2017 WL 2859559 (D.C. Cir. June 23, 2017).

policy and . . . [is] in fact properly classified pursuant to such Executive order." 5 U.S.C. §
552(b)(1). The operative Executive Order is Executive Order 13526, which allows classification
if the following conditions are met:

> (1) an original classification authority is classifying the information;
> (2) the information is owned by, produced by or for, or is under the control of the United States Government;
> (3) the information falls within one or more of the *categories of information listed in section 1.4* of this order; and
> (4) the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security, which includes defense against transnational terrorism, and the original classification authority is able to identify or describe the damage.

Exec. Order No. 13,526 § 1.1(a), 75 Fed. Reg. 707 (Dec. 29, 2009). The "categories of information
listed in section 1.4 of this order" relevant to this action are "(c) intelligence activities (including
covert action), intelligence sources or methods, or cryptology" and "(d) foreign relations or foreign
activities, including confidential sources." Exec. Order No. 13,526 § 1.4, 75 Fed. Reg. 707 (Dec.
29, 2009) (emphasis added); CIA Mot. at 10. To support its use of 1.4(c) and (d), the CIA argues
that "certain records at issue contain information that would reveal specific intelligence targets,
the locations of CIA activities—current and historic—and the targets of specific CIA operations."
CIA Mot. at 11; Williams Dec. ¶ 25. The CIA further argues that "certain documents at issue here
show the processes and policies for working with foreign services, foreign individuals, and
clandestine assets who aid the CIA in its intelligence operations." CIA Mot. at 11, Williams Dec.
¶ 26. "Revelation of these relationships could hurt the Agency's relationships with these entities—
entities that often agree to cooperate with the CIA on the understanding that the relationships will
remain secret." CIA Mot. at 11, Williams Dec. ¶ 26.

## 2.  The CIA's Use of Exemption 3

The CIA uses Exemption 3, in addition to Exemption 1, to "apply independently and coextensively" in supporting their withholding decisions.  CIA Mot. at 13 n.1.  Every document that the CIA withheld under Exemption 1 was also withheld under Exemption 3.  *See Vaughn* index.  There are only two documents, Document 1 and Document 14, which the CIA withheld pursuant to Exemption 3 without also invoking Exemption 1.

Exemption 3 provides that files are exempt from FOIA disclosure if they are "specifically exempted from disclosure by statute."  5 U.S.C. § 552(b)(3).  The statute must either "require[] that the matters be withheld from the public in such a manner as to leave no discretion on the issue," or "establish[] particular criteria for withholding or refers to particular types of matter to be withheld."  *Id.*  The CIA is specifically relying on two statutes, the National Security Act of 1947 (National Security Act) and the Central Intelligence Agency Act of 1949 (CIA Act).  CIA Mot. at 12–14.  The National Security Act is a well-established Exemption 3 withholding statute for protecting intelligence sources and methods.  *See Cent. Intel. Agency v. Sims*, 471 U.S. 159, 167 (1985).  And indeed, the CIA relies on the National Security Act to withhold information that would "reveal intelligence sources and methods."  CIA Mot. at 13.  Specifically, the CIA notes that the two documents (Documents 1 and 14) withheld pursuant to Exemption 3 under the National Security Act, without also being withheld pursuant to Exemption 1, are exempt under Exemption 3 because they contain intelligence sources and methods.  CIA Mot. at 13–14; Williams Dec. ¶ 31.  The CIA Act is similarly a well-established Exemption 3 withholding statute, providing that the CIA shall be exempted from provisions of any law that require disclosure of "organization or functions of the Agency, or of the names, official titles, salaries, or numbers of personnel employed by the Agency."  50 U.S.C. § 3507; *see also Goland v. Cent. Intel. Agency*, 607 F.2d

339, 350 (D.C. Cir. 1978).  The *Vaughn* index shows that the CIA relied on the CIA Act in eleven

documents.[3]

### 3.  Plaintiff's Challenges to the CIA's Use of Exemption 1 and 3

Plaintiff goes through each document that the CIA withheld pursuant to Exemptions 1 and

3 and challenges the CIA's description and reason for withholding.  Pl.'s Mot. at 17–25.  Plaintiff's

overarching argument is embedded in its identification and explanation of each of the CIA's

withheld documents: the document-by-document attack of the CIA's withholdings is a tour of all

the ways in which Plaintiff already knows what those documents contain, thereby undermining the

CIA's claimed exemptions.  Plaintiff identified Documents 3–22 and uploaded them as exhibits,[4]

*see* Pl.'s Mot. at 11–23, and Plaintiff also states that they were unable to identify Documents 24–

36 because "none of these documents contain adequate descriptions to allow Plaintiff or the Court

to determine the merits of the . . . exemptions claimed as a basis for withholding these documents

in full."  Pl.'s Mot. at 24.[5]  In sum, using Plaintiff's words, "[m]ost importantly, the information

the CIA has claimed is classified in the documents that the Plaintiff was able to identify in

previously released unredacted documents, disproves any claim that most of the information in the

documents withheld in full is classified."  Pl.'s Mot. at 33–34.

Plaintiff is correct.  During this Court's *in camera* review, it became apparent that the

documents withheld in full, which Plaintiff identified, are on PACER as exhibits in this

litigation, completely undermining the CIA's basis for their continued withholding.  "[T]he logic

of FOIA postulates that an exemption can serve no purpose once information—including

---

[3] The Court observed two discrepancies, where the *Vaughn* index lists the CIA Act as a cited exemption, but
then does not reference the CIA Act in the description of the document.  *See Vaughn* Index, Docs. 23 and 29.

[4] The Court observed during *in camera* review that Plaintiff did not correctly identify and upload Document
16.  All other documents were correctly identified.

[5] Document 23, while not directly challenged by Plaintiff, is addressed in Section III.B.4, *infra*.

sensitive law-enforcement intelligence—becomes public." *Pike*, 306 F. Supp. 3d at 400.  It is well settled that "materials normally immunized from disclosure under FOIA lose their protective cloak once disclosed and preserved in a permanent public record." *Cottone v. Reno*, 193 F.3d 550, 554 (D.C. Cir. 1999); *see also id.* ("[T]he logic of FOIA mandates that where information requested is truly public, then enforcement of an exemption cannot fulfill its purposes." (internal quotation marks and citation omitted)).  To this Court, the CIA's blanket withholding of public documents, and its failure to respond to Plaintiff's identification of this fact, demonstrates that the CIA has not taken its disclosure obligation seriously in response to Plaintiff's FOIA request.

Plaintiff also challenges the adequacy of the *Vaughn* index.  *See Vaughn v. Rosen*, 484 F.2d 820, 826–28 (D.C. Cir. 1973) (requiring agencies resisting FOIA disclosure to index the information withheld and provide non-conclusory justifications for doing so).  Plaintiff argues that the CIA's *Vaughn* index is inadequate, "so vague and uninformative as to be useless," *see* Pl.'s Mot. at 33, and requests that this Court order the CIA to "provide meaningful descriptions of these documents which the Court can confirm during the Court's *in camera* review to determine whether the exemptions were properly asserted."  Pl.'s Mot. at 17.

An adequate *Vaughn* index must "specifically identify" why a particular exemption is relevant to a particular document—"threadbare" descriptions will not suffice.  *Watkins L. & Advocacy, PLLC v. U.S. Dep't of Just.*, 78 F.4th 436, 452 (D.C. Cir. 2023); *see also King v. U.S. Dep't of Just.*, 830 F.2d 210, 219 (D.C. Cir. 1987) ("Specificity is the defining requirement of the Vaughn index.").  The *Vaughn* index must "convey enough information for [the plaintiff] and the court to identify the records referenced and understand the basic reasoning behind the claimed exemptions," *Morley v. CIA*, 508 F.3d 1108, 1123 (D.C. Cir. 2007), but it may contain "brief or

categorical descriptions when necessary to prevent the litigation process from revealing the very information the agency hopes to protect." *A.C.L.U.*, 710 F.3d at 432. Short descriptions in a *Vaughn* index are more appropriate when coupled with an *in camera* review. *See Tax Analysts v. I.R.S.*, 410 F.3d 715, 719–720 (D.C. Cir. 2005). But "reviewing documents in camera is no 'substitute for the government's obligation to provide detailed public indexes and justifications whenever possible.'" *Roth v. U.S. Dep't of Just.*, 642 F.3d 1161, 1185 (D.C. Cir. 2011) (quoting *Lykins*, 725 F.2d at 1463). In other words, the agency must give the court a "reasonable basis to evaluate the claim of privilege." *Delaney, Migdail & Young, Chartered v. I.R.S.*, 826 F.2d 124, 128 (D.C. Cir. 1987).

Here, particularly in the context of the CIA's apparent disregard of its FOIA disclosure obligations, this Court holds that the CIA's *Vaughn* index is inadequate. The CIA asserted Exemption 1 and 3 across the board for many public documents, a concerning pattern which calls into question whether the CIA should be afforded any deference in their withholding determinations for any of the other withheld documents. But even on its face, the *Vaughn* index is lacking. An adequate *Vaughn* index must "describe[] each withheld record or deletion, "set[] forth the exemption claimed," and "explain why that exemption is relevant." *King v. U.S. Dep't of Just.*, 830 F.2d 210, 224 (D.C. Cir. 1987). Here, the descriptions merely recite the legal standard for each exemption asserted, with the same definition copied and pasted for every document. The "fatal flaw" with such descriptions "is that it is essentially a restatement of the generic rationale for the [exemption] itself." *Americans for Fair Treatment v. U.S. Postal Serv.*, 663 F. Supp. 3d 39, 60 (D.D.C. 2023) (internal quotations omitted). Indeed, to this Court, the *Vaughn* index looks like "a game of MadLibs," as the descriptions often use only one-word to identify the document, such as "memorandum" or "cable." *Id.* While it is true that this Circuit has upheld *Vaughn* indices

that are "categorical and with little variation from page to page," *see, e.g., Morley*, 508 F.3d at

1123, that was in a context where the "released portion of the document supplements the *Vaughn*

index." *Id*; *see also* Pl.'s Reply at 15.  Here, the CIA has withheld 34 of the 36 documents in full

and has provided a conclusory *Vaughn* index.  There is no "reasonable basis to evaluate" the CIA's

withholdings, even when coupled with *in camera* review, and this Court cannot decipher a logical

or plausible basis for withholding these documents.[6]

In sum, this Court holds that the CIA did not properly assert FOIA Exemptions 1 and 3 for

the documents which are already in the public domain, identified in Plaintiff's summary judgment

motion.  The CIA must produce these documents and submit an updated *Vaughn* index to justify

remaining redactions on these publicly available pages.  For all other documents, the CIA must

provide an updated *Vaughn* index with meaningful descriptions for Plaintiff to be able to evaluate

the basis of withholding, or else produce the documents in full.

### 4.   The CIA's Use of Exemption 5 for Documents 1, 23, 29, and 30

The CIA invoked Exemption 5 only for a few select documents, which the Court will

address briefly here.  Exemption 5 protects from FOIA's disclosure requirements "inter-agency or

intra-agency memorandums or letters which would not be available by law to a party other than

an agency in litigation with the agency." 5 U.S.C. § 552(b)(5).  This language has been construed

as covering materials "normally privileged in the civil discovery context."  *N.L.R.B. v. Sears,*

*Roebuck & Co.*, 421 U.S. 132, 149 (1975).  In other words, "Exemption 5 permits an agency to

---

[6] Documents 1–2, the only two documents released in part, warrant individual attention here.  For Document 1, Plaintiff argues that the redacted information has "previously been released in great detail, in any of the documents withheld in full by the CIA."  Pl.'s Mot. at 26.  For Document 2, Plaintiff argues that "it is not clear [sic] how the redactions relate to national security interests."  *Id.*  Particularly in light of the CIA's seemingly indiscriminate withholding of public documents, this Court is also unable to determine the reasoning behind the CIA's redactions in Documents 1 and 2, even when coupled with *in camera* review.

withhold internal documents that would be privileged or otherwise undiscoverable in civil litigation." *Stonehill v. I.R.S.*, 534 F. Supp. 2d 1, 4 (2008).

In the *Vaughn* index, the CIA lists Exemption 5 as a basis for withholding Documents 1, 23, 29, and 30 and lists the privilege invoked. *See Vaughn* Index.[7] However, nowhere in the CIA's motions or the Williams Declaration does the CIA further explain the need to invoke Exemption 5 for these documents. The Court addresses each document in turn:

- Document 1 was released in part. However, the Court cannot decipher the purpose of Exemption 5, because the *Vaughn* index only gives the definition of Exemption 5. A more thorough description of the purpose of this Exemption is needed.

- Document 23 is described in the *Vaughn* index as a "legal memorandum summarizing litigation interests of the CIA," dated June 22, 1973, and Plaintiff believes that this description is adequate to justify withholding under Exemption 5, *see* Pl.'s Mot. at 24, but this Court believes that the CIA needs to update this description to include the author and recipient and more information regarding the purpose of the Exemption.

- Document 29 is simply described as a "legal memorandum," *see Vaughn* Index, and as Plaintiff notes, the description does not mention the author, recipient, or date. *See* Pl.'s Mot at 24.

- Lastly, as Plaintiff correctly identifies, Document 30 is identical to Document 3, and the (improper) use of Exemption 5 for this document is addressed *infra*.

Therefore, based on the inadequate descriptions, this Court finds that the CIA has not provided a basis for invoking Exemption 5 for Documents 1, 23, and 29. Consistent with the

---

[7] To emphasize, Exemption 5 was also used to withhold Documents 3–7, but these Exemptions were asserted by the IRS and DOJ Tax, as addressed in the following section. Documents 1, 23, 29, and 30 were only reviewed by the CIA.

outcome above regarding the inadequacy of the *Vaughn* index, the CIA will be ordered to submit updated descriptions for these documents that comport with the D.C. Circuit's standards of adequacy.

### C. DOJ Tax and IRS's Review of Documents 3–7

Five records, Documents 3–7, were additionally withheld in full after consultation with the IRS and DOJ Tax.  Exemption 5 was used to justify withholding in full, and Exemption 3 was used to redact tax-identifying information of third parties.  As explained below, the Court finds that the agencies are collaterally estopped from asserting Exemption 5 to withhold Documents 3–6; Document 7 is not protected by attorney work-product privilege, and therefore is not protected under Exemption 5; and once these documents are produced, Plaintiff may challenge any remaining redactions under Exemption 3.

### 1. DOJ Tax and IRS's Use of Exemption 5

After referral from the CIA, the IRS and DOJ Tax asserted that certain pages from Documents 3–7 were withheld in full because "they consist of legal and factual memoranda, along with supporting materials, prepared by counsel, and involve agency personnel and agency counsel and officials, and their discussion and recommendations regarding the Stonehill prosecution."  CIA Mot. at 15; Declaration of IRS Senior Technician Reviewer Vikramsing R. Barad, ECF No. 43-3 ("Barad Dec."), ¶ 8.  The withheld information "is considered confidential under the . . . attorney-client and attorney work product privileges."  CIA Mot. at 16.[8]

---

[8] The CIA also listed the deliberative process privilege, omitted from this quotation. Plaintiff correctly observes that the CIA cannot rely on the deliberative process privilege because that privilege does not apply to documents older than twenty-five years. Pl.'s Mot. at 10.  The CIA then, incorrectly, denies ever having asserted the deliberative process privilege.  CIA Reply p. 4, n. 3.  Because the deliberative process privilege would not apply in any event, the Court will move forward only analyzing the CIA's assertion of the attorney client and work product privileges.

Plaintiff argues that the agencies are collaterally estopped from asserting the attorney-client and attorney work product privileges under Exemption 5 because the application of these privileges, as it pertains to these very documents, was already decided adversely to the IRS.  Pl.'s Mot. at 9.  Collateral estoppel, also known as issue preclusion, provides that "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen v. McCurry*, 449 U.S. 90, 94 (1980).  To assert collateral estoppel, the issue raised (1) must have been "submitted for judicial determination in [a] prior case"; (2) that issue must have "been actually and necessarily determined" in the prior case; and (3) preclusion in the present case "must not work an unfairness to the party bound by the first determination."  *See Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992) (citing *McLaughlin v. Bradlee*, 803 F.2d 1197, 1201 (D.C. Cir. 1986)).  To understand Plaintiff's collateral estoppel argument, it is necessary to provide a brief background on the prior litigation at issue, and the prior case in this Circuit that addressed this very collateral estoppel issue.

In 2005, as part of the Rule 60(b) litigation, the California district court rejected the IRS's claims that the attorney-client privilege and work product doctrine barred production of certain documents and granted Mrs. Stonehill's motion to compel production, ordering the IRS to "turn over documents regarding the 1966 Tax Division investigation into the government's role in the 1962 raids."  ECF 51-11; *see also Stonehill v. I.R.S.*, 558 F.3d 534, 537 (D.C. Cir. 2009) (referencing this order).  Separately, in 2006, Mrs. Stonehill filed a FOIA complaint in D.C. district court, seeking production of IRS records—including those that the IRS had been ordered to produce in the Rule 60(b) proceeding. *See Stonehill v. I.R.S.*, 534 F. Supp. 2d at 1.  The IRS moved for summary judgment, invoking several FOIA exemptions, the relevant one here being Exemption

5 based on the attorney client and work product privileges.  In opposing summary judgment, Mrs. Stonehill argued that the IRS was collaterally estopped from asserting Exemption 5, because those same documents were held to not be protected by the attorney client or work product privileges in the Rule 60(b)(6) proceeding.  The D.C. district court agreed with Mrs. Stonehill.  *Stonehill v. I.R.S.*, 534 F. Supp. 2d at 7-8.  The court reasoned that "a direct holding on the application of [attorney client and work product] privileges in a prior proceeding addressing the same documents amounts to the 'same issue' for purposes of collateral estoppel." *Id.* at 7.  "FOIA Exemption 5 . . . mirrors the Rule 26 discovery rules; indeed, the exemption is written to parallel civil discovery privileges." *Id.*

Here, Plaintiff's argument is virtually the exact same as the plaintiff's argument that prevailed in the D.C. district court—these documents are not protected by the attorney client or attorney work product privilege under Exemption 5, so the IRS is barred from invoking Exemption 5 on the CIA's behalf.  Pl.'s Mot. at 8–15, 34.  The CIA makes two arguments in response: one, that Plaintiff cannot show that these are the same documents as in the prior proceedings,[9] and two, even if they were, the CIA is not collaterally estopped from relitigating the application of discovery privileges.  CIA Reply at 6.  The latter argument fails for the exact reasons given in the D.C. district court's 2008 ruling, and this Court sees no reason to rehash that reasoning, explained *supra*.[10]  *See Stonehill v. I.R.S.*, 534 F. Supp. 2d at 7–8.  So, the determination of the agencies' reliance on Exemption 5 hinges on whether Documents 3–6 are in fact the same documents that multiple courts have now held are not protected under the attorney-client or work product privilege.

---

[9] The Court also wonders what more the CIA expects Plaintiff to do to prove that these documents are the same, given that the CIA is withholding these documents in full.  Pl.'s Reply at 17.

[10] The CIA likely already realizes this, which would explain why its brief details the policy reasoning behind the FOIA waiver rule, which is not implicated here.  CIA Reply at 5.

During *in camera* review, the Court determined that Documents 3–6 are indeed the same documents that which Plaintiff identified and uploaded to PACER, which two prior courts have already found are not protected under Exemption 5 based on the attorney-client or work product privileges. Therefore, as the CIA is relying on the IRS and DOJ Tax's invocation of Exemption 5, *see* Barad Dec. ¶ 8, the agencies are collaterally estopped from asserting Exemption 5 as a basis for withholding Documents 3-6 in full.

Furthermore, Document 7 is described as "an affidavit and legal memoranda in connection with the Stonehill prosecution" and is "referenced as an attachment" in Documents 3–6. *See Vaughn* Index. The CIA invoked Exemption 5 "to protect attorney work product." *Id.* But this Court confirmed that this withheld document is the 1965 affidavit of Wylyss Newcomb, who was Mr. Stonehill's attorney, not the government's attorney. Plaintiff correctly notes this, and also states that Plaintiff had initially requested the name of the author of the affidavit to evaluate the claim of work product, but the CIA denied this request. Pl.'s Mot. at 16. Plaintiff argues that "[i]t is now apparent that the CIA refused to provide the information identifying the author because it would have revealed that the document was authored by Stonehill's attorney, not by a government attorney." *Id.* This Court suspects the same. The Williams Declaration states that the CIA invoked the work product privilege "to withhold communications from or between *Agency attorneys* discussing the then-ongoing Stonehill investigation." Pl.'s Reply at 3 (quoting Williams Dec. ¶ 42). The Declaration states that "if this information were to be released, it would expose the attorneys' preliminary litigation risk analysis and strategy." Williams Dec. ¶ 42. It strains credulity to see how the production of an affidavit prepared by Mr. Stonehill's attorney would have such an effect. In sum, the Court finds that Exemption 5 does not protect Documents 3–7 from disclosure.

25

## 2.   DOJ Tax and IRS's Use of Exemption 3

The CIA, in coordination with DOJ Tax and IRS, withheld taxpayer privacy information in Documents 3–7 pursuant to Exemption 3, invoking the Internal Revenue Code (IRC) § 6103(a) as the statute prohibiting disclosure.  CIA Mot. at 14.  The agencies argue that these documents contain third party return information belonging to persons other then Mr. Stonehill, which must remain confidential under the IRC.  CIA Mot. at 14-15.  The CIA also observes in their reply that "Plaintiff does not appear to contest Defendant's reliance on Exemption 3 (based on disclosures prohibited by the IRC) with respect to [Documents 3–7]."  CIA Reply at 2 n.1.  Plaintiff then states in their reply that that they are unable to challenge the agencies' reliance on Exemption 3 for redactions "because these documents have been withheld in full."  Pl.'s Reply at 13.

Plaintiff is correct that the CIA is improperly withholding Documents 3-7 in full under Exemptions 1 and 5, and as explained above, the Court is ordering the CIA to produce Documents 3–7.  Based on this Court's review, it appears that the agencies have properly invoked Exemption 3 to protect the tax information in these documents under IRC § 6103(a).  *See* Barad Dec. ¶ 6, ECF No. 43-3 ("None of the provisions of the IRC authorizes the release to the plaintiff the return information of any other taxpayer [other than Harry S. Stonehill]").  However, upon production of these documents, the CIA must supplement the *Vaughn* index to show that it disclosed all reasonably segregable non-exempt information—and once these documents are produced, then Plaintiff will have the opportunity to challenge these redactions if appropriate.

## D.   FBI Review of Documents 3–6

The FBI invoked Exemption 7(D) for Documents 3–6,[11] and additionally invoked Exemptions 6 and 7(C) for Document 4, to partially redact these documents.  *See Vaughn* Index.

---

[11] The CIA listed Exemption 7(D) as applicable to Document 30.  *See Vaughn* Index.  However, as noted *supra*, Document 30 is identical to Document 3.  The Court will ignore the CIA's inclusion of Document 30.

To emphasize again, the CIA is already withholding these documents in full.  As explained *supra*, the CIA is improperly withholding these documents in full and will be ordered to produce them, and at that point, Plaintiff will have an opportunity to evaluate the specific redactions made under each of these FOIA exemptions.

### 1.   Exemption 6 and 7(C) for Document 4

Exemption 6 protects materials from disclosure which contain "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy[.]" 5 U.S.C. § 552(b)(6). "Similar files" includes "detailed Government records on an individual which can be identified as applying to that individual." *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982) (quoting H.R. Rep. No. 1497).  Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes," to the extent that disclosure would cause a harm enumerated in Exemption 7's subsections.   5 U.S.C. § 552(b)(7).  Specifically, Exemption 7(C) exempts law enforcement information from disclosure "to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).  The Supreme Court has noted that "Exemption 7(C)'s privacy language is broader than the comparable language in Exemption 6." *U.S. Dep't of Justice v. Reps. Comm. for Freedom of Press*, 489 U.S. 749, 774 (1989).  Accordingly, the D.C. Circuit has held that 7(C) "establishes a lower bar for withholding material" than Exemption 6.  *A.C.L.U. v. U.S. Dep't of Justice*, 655 F.3d at 6.

Here, the CIA, in coordination with the FBI, invoked Exemptions 6 and 7(C) "based upon the presence . . . of the unique internal FBI identification number of an FBI professional staff member" in Document 4.  CIA Mot. at 16; Declaration of FBI Section Chief Michael G. Seidel,

ECF No. 43-4 ("Seidel Dec."), ¶ 17.[12]  The agencies stated that this record was compiled for law enforcement purposes "during the FBI's participation in the investigation and prosecution of Stonehill and others," and listed the various charges levied against Stonehill in the wake of the raids. CIA Mot. at 17; Seidel Dec. ¶ 13.

Plaintiff takes issue with the agencies' application of Exemptions 6 and 7(C) because, since Document 4 is being withheld in full, Plaintiff has no ability to identify or challenge the specific redactions. Pl.'s Mot. at 34.  Withholding this document in full "prevents the Plaintiff from seeing the context of the redactions or from disputing the merits of the redactions."  Pl.'s Reply at 22. The Seidel Declaration contains a *Vaughn* index that identifies FBI redactions by Bates numbers, ECF No. 43-5, but "the reference to Bates numbers is irrelevant and there is no way for the Plaintiff to evaluate the merits of the alleged FBI redactions."  Pl.'s Mot. at 13.

The CIA argues that "[i]f the Court finds the CIA's withholding in full under Exemptions 1 and 3 is proper, then the issue of the FBI's partial withholding is moot," since Plaintiff is barred from seeing the document anyway.  CIA Reply at 13.  But, as is becoming a theme here, because the CIA has improperly withheld Document 4 under Exemptions 1 and 3, Plaintiff may have identified a proper basis to dispute these redactions had they seen them, as was their right.  Upon production of Document 4, Plaintiff may challenge any remaining redactions that the agency should claim pursuant to Exemptions 6 and 7(C).

### 2.  Exemption 7(D) for Documents 3–6

The FBI relied on Exemption 7(D) to redact the name and identifying information of a confidential source in Documents 3, 4, 5, and 6.  CIA Mot. at 21; Seidel Dec. ¶¶ 8, 23.  The FBI

---

[12] The Court observes that the CIA's motion refers to "documents" (plural) in which Exemption 6 and 7(c) were invoked, but based on the *Vaughn* index and the Seidel declaration, it appears that only Document 4 relied on this Exemption.

also withheld information "received from and related to how a foreign government official gleaned specific investigatory information, the results of inquiries within their own country, and which shows the specific sensitive information shared with FBI investigators."  CIA Mot. at 21; Seidel Dec. ¶ 28.

Exemption 7(D) protects from disclosure records or information, compiled for law enforcement purposes, that "could reasonably be expected to disclose the identity of a confidential source . . . [who] furnished information on a confidential basis."  5 U.S.C. § 552(b)(7)(D).  "A source is confidential within the meaning of 7(D) if the source provided information under an express assurance of confidentiality or in circumstances from which such an assurance could reasonably be inferred," and is determined on a case-by-case basis. *Williams v. FBI*, 69 F.3d 1155, 1159 (D.C. Cir. 1995) (citing *U.S. Dep't of Just. v. Landano*, 508 U.S. 165, 172 (1993)).

Plaintiff argues that the redacted information pursuant to Exemption 7(D) "is likely the name of the informant Menhart Spielman," and there is no basis for redaction because "Spielman is deceased and there is no privacy interest to protect because he has been identified as a confidential informant in hundreds of FBI documents."  Pl.'s Mot. at 35.  And again, the Court is faced with an odd posture: Plaintiff arguing based on redactions he only suspects, but has not seen, because the documents in dispute are improperly withheld in full.  Because Plaintiff has not been afforded an opportunity to review these redactions, upon the production of Documents 3–6, Plaintiff can challenge the bases of these redactions as appropriate.

**E.  Segregability**

The FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such a record after deletion of the portions which are exempt under this subsection." 5 U.S.C. 552(b).  The CIA cites to the relevant affidavits from the CIA, IRS, and FBI to argue that the agencies released all reasonably segregable information.  CIA Mot. at 22–23

(citing the Williams, Barad, and Seidel Declarations).  Plaintiff recites an argument that echoes other parts of their brief, that there is "no basis" for the exemptions "because those documents have been produced unredacted in related FOIA proceedings."  Pl.'s Mot. at 38.  Plaintiff then writes that "[t]he Court can determine whether those exemptions have been asserted in good faith by reviewing the attached documents during its in-camera review."  *Id.*

"It has long been a rule in this Circuit that non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Mead Data Cent. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977).  "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material." *Sussman*, 494 F.3d at 1117 (citing *Boyd v. Crim. Div. of U.S. Dep't of Just.*, 475 F.3d 381, 391 (D.C. Cir. 2007)).  Yet, "agencies must still demonstrate with 'reasonable specificity' the bases for their conclusions regarding segregability." *Khatchadourian*, 453 F. Supp. 3d at 81.  "An agency 'must usually submit a sufficiently detailed *Vaughn* Index for each document and an affidavit or declaration stating that it has released all segregable material' to meet this burden.  A conclusory affidavit or declaration is insufficient." *Id.* at 82 (citations omitted).  A plaintiff may overcome the presumption that the agency has disclosed segregable material with "some 'quantum of evidence.'" *Henderson v. Off. of the Director of Nat'l Intel.*, 151 F. Supp. 3d 170, 179 (D.D.C. 2016) (quoting *Sussman*, 494 F.3d at 1117).

As is likely apparent at this point, the Court determines that the CIA did not release all segregable information.  Plaintiff has produced more than a "quantum" of evidence to overcome the presumption of segregability—nearly twenty documents withheld in full are available for the public on PACER, and the *Vaughn* index and accompanying motions provide no logical or plausible explanations for withholding.  The CIA is therefore instructed to go back to each of these

documents and make a serious attempt to segregate publicly available information from that which is legitimately withheld.

## IV.   CONCLUSION

Based on the foregoing, the Court will **GRANT IN PART** and **DENY IN PART** Plaintiff's motion for summary judgment and will **GRANT IN PART** and **DENY IN PART** the CIA's motion for summary judgment.   The Court will **GRANT** the CIA's motion for summary judgment regarding its assertion of *Glomar*.   But the Court will **DENY** the CIA's motion for summary judgment on the remaining issues.   Specifically, the Court will **ORDER** the CIA to produce the pages of the public documents that Plaintiff already identified (Documents 3–15 and 17–22) and submit an updated *Vaughn* index to justify remaining redactions.   For the documents which Plaintiff did not yet identify (Document 16 and Documents 23–36), the Court will **ORDER** the CIA to submit an updated *Vaughn* index with adequate specificity justifying withholding determinations, or else produce these documents in full.   For Documents 1 and 2, released in part, the Court will **ORDER** the CIA to further justify the redactions on its updated *Vaughn* index with adequate descriptions.

Date: September ___**3** **0**___, 2024

_____
Hon. Royce C. Lamberth
United States District Judge