**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

**PATRICK LENZ**, *Co-Executor of the Estate of Harry S. Stonehill*,

     *Plaintiff*,

**v.**

**CENTRAL INTELLIGENCE AGENCY**,

     *Defendant*.

**Case No. 1:20-cv-3327-RCL**

<u>**MEMORANDUM OPINION**</u>

Plaintiff Patrick Lenz is the co-executor of the estate of the late Harry S. Stonehill. He seeks disclosure of documents under the Freedom of Information Act ("FOIA") from the Central Intelligence Agency ("CIA") regarding a 1962 raid of Mr. Stonehill's business empire in the Philippines and the extent of the U.S. government's involvement therein. In September 2024, this Court resolved an initial round of cross-motions for summary judgment by the parties. *See Lenz v. Cent. Intel. Agency*, No. 20-cv-3327 (RCL), 2024 WL 4346263 (D.D.C. Sept. 30, 2024) ("*Lenz I*"). The Court largely denied the CIA's motion for summary judgment and ordered the agency to re-run its production of responsive documents and update its *Vaughn* index to justify any remaining redactions.

Now before the Court are renewed cross-motions for summary judgment. For the reasons contained herein, the Court will **GRANT** the CIA's Motion for Summary Judgment and **DENY** Plaintiff's Motion.

# I.    BACKGROUND

This case forms part of an extensive history of litigation pertaining to the 1962 Stonehill raids in the Philippines.  The Court recounted this history at length in its prior summary judgment opinion.  *See Lenz I* at \*1–\*2.  Therefore, the Court will only recount the facts that are necessary for the purpose of resolving the instant motions.

Mr. Stonehill owned a vast business empire in the Philippines.  Its success attracted the interest of both the U.S. Federal Bureau of Investigation ("FBI") and the Philippine National Bureau of Investigation ("NBI").  On March 3, 1962, the NBI carried out an immense raid of the businesses.  Many of the seized documents were shared with U.S. authorities and led to a multi-million-dollar tax judgment against Stonehill in 1984 that economically devastated him.  *Lenz I* at \*1.

The Stonehill family has sought to challenge that tax judgment ever since.  Most relevant to the instant case is the Ninth Circuit's ruling on Mr. Stonehill's Rule 60(b)(6) motion (referred to throughout this opinion as the "Rule 60(b) litigation").  In 2000, Mr. Stonehill moved to set aside the tax judgment pursuant to Federal Rule of Civil Procedure 60(b)(6), arguing that the U.S. government had committed fraud on the court by misrepresenting the extent of their involvement in the raids and violated the Fourth Amendment to obtain the tax judgment.  *United States v. Est. of Stonehill*, 660 F.3d 415 (9th Cir. 2011).  After a decade of protracted proceedings, in 2011, the Ninth Circuit affirmed a denial of Mr. Stonehill's Rule 60(b) motion, stating that although he had demonstrated "misconduct" by the government, "it [was] insufficient to demonstrate fraud on the court."  *Id.* at 417.  Mr. Stonehill died in 2002, but his fight against the U.S. government did not die with him.  The Stonehill family has submitted numerous FOIA requests to obtain more

information about the raids, the U.S. government's involvement in those raids, and the labyrinth of litigation that resulted, bringing the Court to the instant case.

In 2018, Pauline Dale Stonehill, acting as co-executor and co-administrator of the estate of her late husband, submitted a FOIA request to the CIA. The CIA failed to respond to Mrs. Stonehill's request, and in 2020, she brought this action to compel disclosure.[1] After multiple years of searching, the CIA ultimately identified thirty-six responsive documents. Under FOIA Exemptions 1, 3, 5, 6, 7(C), and 7(D), the CIA released two of these documents in part (Documents 1 and 2) and withheld the other thirty-four in full (Documents 3 through 36). The CIA made these withholding determinations after consultation with the FBI and Internal Revenue Service ("IRS"), both of which claimed numerous FOIA Exemptions in various documents. Finally, the CIA asserted a *Glomar* response for a portion of the FOIA request, in which the CIA indicated it could "neither confirm nor deny" the existence of responsive documents. Plaintiff disputed many of the withholdings and the parties cross-moved for summary judgment.

The Court resolved these motions on September 30, 2024. The Court granted the CIA's Motion with regard to its invocation of *Glomar* but denied summary judgment on all other issues. The Court did so after discovering that nineteen documents that the CIA had identified as responsive but had withheld in full (namely, Documents 3–15 and 17–22), were *already public*—indeed, Plaintiff had produced versions of them on the public docket of this case, a fact which the CIA failed to engage with or even acknowledge. The Court ordered the CIA to produce Documents 3–15 and 17–22 with a new *Vaughn* index justifying any remaining redactions. Fifteen other documents—namely, Documents 16 and 23–36—were, by contrast, not already on the public

---

[1] Mrs. Stonehill died in October 2023. Dr. Patrick Lenz, co-executor of Mr. Stonehill's estate, was substituted as the named plaintiff. Order Granting Mot. for Substitution of Parties, ECF No. 68.

docket of this case, but the CIA has provided conclusory and boilerplate justifications for withholding in its *Vaughn* index. The Court ordered the CIA either to re-do the *Vaughn* index entries for Documents 16 and 23–36, or else to produce them in full. Lastly, for the two documents that the CIA had released in part (Documents 1 and 2), the Court similarly found that the CIA had failed to adequately explain the bases for the redactions and ordered the CIA to further justify the redactions in an updated *Vaughn* index or else release the documents in full.

About two months later, the parties filed a joint status report explaining that the CIA had re-processed the thirty-six documents at issue, with coordination from the FBI and IRS, and submitted new *Vaughn* Indices with its final production. Joint Status Report, ECF No. 90. Eight of the documents were released without any redactions from any of the agencies (Documents 1, 2, 8–10, 18, 20 and 32), representing a significant change from the original blanket withholdings. The remaining twenty-eight documents were released in part. The agencies invoked combinations of Exemptions 1, 3, 6, 7(C), 7(D), and 7(E) to support a limited set of redactions, which are summarized below:

- CIA Redactions: Documents 3–5, 7, 11–15, 17, 19, 21–26, 28, 30, 31, 33–36

- IRS Redactions: Documents 3–7, 29–30

- FBI Redactions: Documents 12, 16, 21, 26, 27, 28

*See Vaughn* index, CIA Mot. Exs. A & B, ECF No. 92-1. However, despite the agencies' relatively comprehensive production, Plaintiff continues to dispute the bases of the remaining withholdings in a discrete set of documents.

On January 17, 2025, the CIA renewed its Motion for Summary Judgment. Mot. for Summ. J. ("CIA Mot."), ECF No. 92. Plaintiff filed his combined Opposition and Cross-Motion for summary judgment thereafter. Mem. in Opp'n to Mot. for Summ. J., Corrected ("Pl.'s Mot."),

Attach. A, ECF No. 94-9.  The CIA then filed its Reply.  Reply in Further Support of Renewed Mot. for Summ. J. ("CIA Reply"), ECF No. 96.  Plaintiff filed his Reply shortly after.  Reply in Support of Cross-Motion for Summ. J., Corrected ("Pl.'s Reply"), Attach. A, ECF No. 98-10.  The Motions are ripe for this Court's review.

## II.    LEGAL STANDARDS

### A.  The Freedom of Information Act

The FOIA provides an avenue for anyone to request and receive the disclosure of government records. 5 U.S.C. § 552. "FOIA mandates a 'strong presumption in favor of disclosure.'" *A.C.L.U. v. U.S. Dep't of Just.*, 655 F.3d 1, 5 (D.C. Cir. 2011) (quoting *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 32 (D.C. Cir. 2002)).  Therefore, "agencies may withhold only those documents or portions thereof that fall under one of nine delineated statutory exemptions." *Elliott v. U.S. Dep't of Agric.*, 596 F.3d 842, 845 (D.C. Cir. 2010).  But because the FOIA mandates a presumption of disclosure, an agency that withholds material pursuant to FOIA exemptions "bears the burden of showing that withheld material falls within the asserted exemption." *Id.* (citing 5 U.S.C. § 552(a)(4)(B)).  In 2016, Congress passed the FOIA Improvement Act, which now additionally mandates that agencies may withhold information under a FOIA exemption only if the agency "reasonably foresees that disclosure would harm an interest protected by an exemption" or if "disclosure is prohibited by law."  5 U.S.C. § 552(a)(8)(A)(i); *see also Reps. Comm. for Freedom of the Press v. Fed. Bureau of Investigation*, 3 F.4th 350, 357–58 (D.C. Cir. 2021).

### B.  Summary Judgment

A court may grant summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). FOIA cases are usually decided on summary judgment motions. *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009). Where the party seeking disclosure challenges an agency's withholding of records, "the agency is entitled to summary judgment if no material facts are in dispute and if it demonstrates that each document that falls within the class requested . . . is wholly exempt from [the FOIA's] disclosure requirements." *Shapiro v. Dep't of Just.*, 34 F. Supp. 3d 89, 94 (D.D.C. 2014) (citing *Moayedi v. U.S. Customs & Border Prot.*, 510 F. Supp. 2d 73, 78 (D.D.C. 2007)). An agency meets this burden if any combination of its *Vaughn* index, affidavits, or declarations "describe[s] the justifications for nondisclosure with reasonably specific detail, demonstrate[s] that the information withheld logically falls within the claimed exemption, and [is] not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (citation omitted). An agency's justifications will be upheld if they are "logical" or "plausible." *Wolf v. Cent. Intel. Agency*, 473 F.3d 370, 375 (D.C. Cir. 2007) (citations omitted).

### III.    DISCUSSION

Plaintiff acknowledges that "the CIA has made a good-faith effort to unredact a significant amount of the previously redacted information," but maintains that the "removal of the remaining redactions would not pose a threat to national security" and that the redacted information at issue does not "merit privacy protections" from the agencies. Pl.'s Mot. at 4. To that end, Plaintiff objects to a circumscribed set of withholdings in specific documents, pursuant to a handful of FOIA Exemptions. The Court proceeds through each of Plaintiff's arguments in turn.

### A.  CIA Withholdings Pursuant to Exemptions 1 and 3

The CIA withheld information under Exemption 1 and Exemption 3 across twenty-four of the thirty-six responsive documents—namely, Documents 3–5, 7, 11–15, 17, 19, 21–26, 28, 30,

31, and 33–36. Plaintiff only challenges the CIA's redactions in a subset of these records: Documents 3, 7, 13, 15,[2] 23, 26, 30, 31, and 35. *See* Pl.'s Mot. at 13–17.

"Exemption 1 protects from disclosure any information that is classified 'under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and is in fact properly classified pursuant to such Executive order.'" *Lenz I* at *7 (quoting 5 U.S.C. § 552(b)(1)). The operative Executive Order is Executive Order 13,526, which allows classification if four conditions are met—namely, (1) an original classification authority classified the information; (2) that authority has determined that the information's release reasonably could be expected to result in damage to the national security; (3) the information is U.S. Government information; and (4) the information falls into a category listed in the Executive Order, including, as relevant here, intelligence activities and foreign relations or foreign activities, including confidential sources. *Id.* at *7–8 (citing Exec. Order No. 13,526 § 1.1(a), 75 Fed. Reg. 707 (Dec. 29, 2009)).

"Exemption 3 provides that files are exempt from FOIA disclosure if they are 'specifically exempted from disclosure by statute.'" *Lenz I* at *8 (quoting 5 U.S.C. § 552(b)(3)). The CIA specifically relies on two statutes: the National Security Act of 1947 ("National Security Act") and the Central Intelligence Agency Act of 1949 ("CIA Act"). The National Security Act protects information that would "reveal intelligence sources and methods," and the CIA Act protects information about "organization or functions of the [CIA], or of the names, official titles, salaries, or numbers of personnel employed by the [CIA]." *Id.* Both are well-established Exemption 3 withholding statutes. *Id.*

---

[2] Plaintiff erroneously asserts that the CIA failed to include Documents 13 and 15 in its *Vaughn* index. To the contrary, the CIA did include both documents in its *Vaughn* index, claiming Exemptions 1 and 3 pursuant to the National Security Act. *See Vaughn* Index.

The CIA has met the requirements to invoke Exemptions 1 and 3 for each of the documents at issue. Regarding Exemption 1, the withheld information has been classified by an original classifying authority—the declarant herself. Declaration of Mary C. Williams, Litigation Information Review Officer ¶ 17, CIA Mot. Ex. 1 ("CIA Decl."). The CIA has concluded that the withheld information, if released, "could impair CIA's ability to carry out its core mission of gathering and analyzing foreign intelligence and counterintelligence and conducting operations, thereby damaging national security." *Id.* ¶ 15. The withheld information "concern[s] a range of [CIA] functions and operations," and therefore falls within the categories protected by the Executive Order. *Id.* ¶¶ 15–17. As such, Exemption 1 is properly invoked. The CIA has also met all of the requirements to invoke Exemption 3—the Exemption 3 CIA Act withholdings are "limited and consist of officers' names and other identifying information as well as functional and organizational information," CIA Mot. at 6 (citing CIA Decl. ¶ 19), and the Exemption 3 National Security Act withholdings only protect information "pertaining to intelligence sources and methods," CIA Mot. at 5 (citing CIA Decl. ¶ 18). Coupled with the CIA's updated *Vaughn* index and new disclosures of portions of the documents at issue, the Court concludes that the CIA has properly supported its withholdings under Exemptions 1 and 3.

Of note, Plaintiff continues to challenge the CIA's *Vaughn* index as boilerplate and therefore insufficient to withhold various documents. Pl.'s Mot. at 13–17. Plaintiff refers back to the Court's first summary judgment opinion, in which it held the CIA's *Vaughn* index inadequate because "the descriptions merely recite the legal standard for each exemption asserted, with the same definition copied and pasted for every document." *Lenz I* at *10. However, the Court also acknowledged that those generic justifications were particularly problematic because at that time, the CIA was withholding nearly all of the documents in full. *Id.* ("While it is true that this Circuit

has upheld *Vaughn* indices that are 'categorical and with little variation from page to page,' that was in a context where the 'released portion of the document supplements the *Vaughn* index.'") (quoting *Morley*, 508 F.3d at 1123).  Now that the CIA has released every document at least in part, the *Morley* reasoning applies: although the *Vaughn* index contains some repetition, the combination of the released portions of the documents with the *Vaughn* index is sufficient to justify withholding.

Plaintiff's other overarching challenge, specifically regarding the CIA's use of Exemption 1, is that the Exemption "cannot be used to protect against the discovery of illegal government conduct."  Pl.'s Mot. at 11.  He argues that "classification of information under [Exemption 1] must be for the purpose of national defense or foreign policy . . . and not to conceal violations of the law."  *Id.*  The Court presumes that Plaintiff is referring to Section 1.7(a) of the applicable Executive Order that the CIA has relied on to invoke Exemption 1, which states that "[i]n no case shall information be classified, continue to be maintained as classified, or fail to be declassified in order to . . . conceal violations of law, inefficiency, or administrative error."  75 Fed. Reg. 707, 710.  It is true that if the CIA were invoking Exemption 1 for the sole purpose of concealing violations of the law by the U.S. government, that would be illegal—the Executive Order proscribes as much.  However, case law in this Circuit also notes that Exemption 1 may be properly invoked even if the documents were borne out of illegal government conduct, as Plaintiff acknowledges in his Motion: "there is no legal support for the conclusion that illegal activities cannot produce classified documents."  Pl.'s Mot. at 12 (citing *ACLU v. U.S. Dep't of Def.*, 628 F.3d 612, 622 (D.C. Cir. 2011)).[3]

---

[3] To be clear, in any event, the surveillance activities by the U.S. government in the Stonehill raid were *not* held to have violated the Fourth Amendment to the U.S. Constitution.  It is true that the Philippine Supreme Court had held that the raid violated the Philippine Constitution's analog to the Fourth Amendment.  It is also true that in U.S. federal

Plaintiff attempts to distinguish the *ACLU* case. There, the plaintiffs were seeking documents "relating to the capture, detention, and interrogation" of Guantanamo Bay detainees, and "the interrogation techniques and conditions of confinement described in the requested documents ha[d] been prohibited by the President" by an Executive Order *after* the activities were carried out. 628 F.3d at 620. The D.C. Circuit concluded that even this subsequent determination of illegality did not preclude withholding because "[d]ocuments concerning surveillance activities *later deemed illegal* may still produce information that may be properly withheld under exemption 1." *Id.* at 622 (emphasis added). Plaintiff latches on to this distinction: that in *ACLU*, a change in the law rendered certain CIA activities illegal after the fact, but here, Plaintiff contends that the Stonehill raid was illegal under the controlling law of the time; it was not "subsequently held" to be illegal. Pl.'s Reply at 18. But this distinction from *ACLU* does not change the Court's conclusion. For one, the CIA conduct in the Stonehill raid has *never* been determined have violated U.S. law—though the Ninth Circuit has suggested that the seizure would have violated the Fourth Amendment if United States agents had conducted the raids, the court held that the Fourth Amendment was not implicated. *See supra* note 4. Furthermore, the *ACLU* court cited *Lesar v. Department of Justice* in support of its holding, and *Lesar* appears to repudiate the distinction Plaintiff observes by upholding the use of Exemption 1 even for documents that may also describe illegal activity. 636 F.2d 472, 483 (D.C. Cir. 1980) ("Although the FBI's surveillance strayed beyond the bounds of its initial lawful security aim, that does not preclude the possibility that the

---

court, the U.S. government did not take the position that the raids were lawful. But instead, the presiding U.S. courts held that the United States agents did not instigate or participate in the raid, so the Fourth Amendment was not implicated. *See Stonehill v. United States*, 405 F.2d 738, 746 (9th Cir. 1968) (rejecting Stonehill's allegation of illegal evidence collection by the U.S. government, finding that the U.S. government "did not participate in the unlawful search"); *Est. of Stonehill*, 660 F.3d at 415 (rejecting Stonehill's Rule 60(b)(6) motion to vacate the tax judgment against him, concluding that there was no fraud on the court in obtaining that judgment). So, the very basis for any supposed illegality exception is unfounded.

actual surveillance documents and the Task Force materials that comment upon those documents may nevertheless contain information of a sensitive nature, the disclosure of which could compromise legitimate secrecy needs.").[4]

Plaintiff's remaining arguments to the contrary are unavailing. He cites to *Weissman v. Central Intelligence Agency*, 565 F.2d 692 (D.C. Cir. 1977), in which the CIA had conducted a five-year-long surveillance operation of a U.S. citizen at home, claiming that the investigation was for "law enforcement purposes" as is required to invoke Exemption 7. *Id.* at 694–96. The court held that the CIA had no law enforcement authority to surveil a private American national on U.S. soil, given that the CIA is prohibited from conducting internal security functions, so Exemption 7 was inapplicable. *See id.* at 695 ("Congress wisely sought from the outset to make sure that when it released the CIA genie from the lamp, the Agency would be prevented from using its enormous resources and broad delegation of power to place United States citizens living at home under surveillance and scrutiny."). Here, it appears that Plaintiff intends for *Weissman* to stand for the broad proposition that illegal action by the CIA cannot justify the use of any FOIA exemption. Pl.'s Mot. at 11. But *Weissman* is inapposite for numerous reasons: it concerns a different FOIA exemption, in a different scenario, that the D.C. Circuit held was inapplicable for a fact-specific set of reasons not translatable here. True, *Weissman* dealt with actions taken by the CIA that were beyond its power, but all that court held was that the CIA could not deem those activities to be "law enforcement" under FOIA Exemption 7 when the CIA had no such domestic law enforcement authority in its enabling charter. Indeed, the *Weissman* court affirmed the CIA's use of Exemptions

---

[4] Plaintiff likely realizes that *Lesar* defeats his argument regarding belated determinations of illegality, which is why he tries to distinguish *Lesar* by arguing that here, there is evidence of bad faith by the CIA. Pl.'s Reply at 16–17. But the Court believes that the CIA's 180-degree change in its stance on withholdings reflects a good faith effort this time around—after years of litigation—to take its disclosure obligations seriously.

1 and 3.  565 F.2d at 699.  In short, *Weissman* does not support Plaintiff's argument—and perhaps even bolsters the CIA's position.

Plaintiff also cites a case from the Second Circuit, in which that court stated that "an 'illegality' inquiry is clearly beyond the scope and purpose of FOIA."  Pl.'s Mot. at 13 (citing *ACLU v. Dep't of Just.*, 681 F.3d 61, 75 (2d Cir. 2012)).  Again, this citation at first appears to support the CIA's position, not Plaintiff's.  But Plaintiff tries a different angle: that here, there is no need for any "inquiry" of illegality because "the wiretapping of Stonehill was illegal under Philippine law and it was illegal under U.S. law."  Pl.'s Mot. at 13.  So (the argument goes), because the Court need not make any independent assessment of legality of the government conduct at issue, the Court can deny the use of any FOIA exemptions related to that conduct.  This argument fails for several reasons.  For one, as the Court has already stated, it is not the case that U.S. surveillance of Stonehill was held to be illegal.  But also, Plaintiff's argument runs head-on into the basic point: information unearthed as a result of legally dubious conduct by the government may still properly be withheld under FOIA, if the prongs of the applicable FOIA Exemption are met.

For all of these reasons, the Court finds that the CIA's invocation of Exemption 1 meets the necessary requirements and summary judgment will be granted to the CIA on this point.  Plaintiff does not appear to make any independent challenges regarding the CIA's use of Exemption 3 and seems to bucket those challenges int the CIA's use of Exemption 1.  The Court resolves those challenges in the CIA's favor as explained *supra*.

**B.  IRS Withholdings Pursuant to Exemption 3: Documents 3–7 and 29**

Plaintiff challenges the IRS's use of Exemption 3 to protect tax-identifying information of third parties contained in Documents 3–7 and 29–30.[5]  Exemption 3 provides that files are exempt from FOIA disclosure if they are "specifically exempted from disclosure by statute," 5 U.S.C. § 552(b)(3), and here, the IRS invokes Internal Revenue Code § 6103(a) as the statute prohibiting disclosure.   Section 6103(a) provides that tax "[r]eturns and return information shall be confidential" and shall not be disclosed "except as authorized by this title."  26 U.S.C. § 6103(a). In turn, § 6103(b) broadly defines the terms "return" and "return information," including to cover a taxpayer's identity.  *Id.*

A brief recounting of the relevant context is needed to resolve the parties' continued dispute on the use of this Exemption.  In the first round of summary judgment briefing, the IRS and the CIA had invoked Exemptions 1 and 5 to withhold Documents 3–7 and 29–30 in full, and separately, the IRS had invoked Exemption 3 to redact tax-identifying information of third parties contained within these documents.  Because the agencies were withholding these documents in full, Plaintiff had no ability to review the documents to challenge the redactions under Exemption 3.  The Court held that the agencies' use of Exemptions 1 and 5 was improper and ordered the CIA to produce these documents.  *Lenz I* at *11–13.  The Court then stated that "once these documents are produced, then Plaintiff will have the opportunity to challenge these redactions if appropriate." *Id.* at *13.  The Court did note, however, that "[b]ased on this Court's [in-camera] review, it appears that the agencies have properly invoked Exemption 3 to protect the tax information in these documents under IRC § 6103(a)."  *Id.*

---

[5] Document 30 is a duplicate of Document 3.  *See Lenz I* at *11, *13 n.1.

At this stage, though the agencies no longer assert Exemptions 1 and 5 to protect these documents, the IRS still invokes Exemption 3 to redact the tax-identifying information of third parties. The redactions "solely consist of third-party tax return information belonging to persons other than Harry S. Stonehill, including the identity of other taxpayers." CIA Mot. at 7. Now that Plaintiff has been able to view these documents with the IRS's redactions, Plaintiff argues that IRS's withholdings are improper because the IRS previously produced unredacted versions of these records to Mr. Stonehill in the Rule 60(b)(6) litigation and, perhaps, another related FOIA case. Pl.'s Mot. at 8. Moreover, Plaintiff says that he "has produced copies of Documents 3–7 and 29–30 that do not contain section 6103(a) redactions that the IRS applied to the documents produced by the CIA in this action." Pl.'s Mot. at 8–9. But as the CIA points out, Plaintiff "does not identify those records aside from Document No. 30 . . . a purported copy of which Plaintiff attaches as Exhibit 1 to his Motion," CIA Reply at 3, and it does not appear that Plaintiff has produced any of the other documents on the public record of this case without IRS 6103(a) redactions.[6] But nonetheless, in Plaintiff's Reply, he emphasizes vehemently that the IRS has already disclosed these documents in unredacted form at some point or another in the protracted history of litigation related to the Stonehill raids. Pl.'s Reply at 3–4.

The dispute over the IRS redactions boils down to this: if the information the IRS redacted pursuant to Exemption 3 is already public, then the Exemption cannot be invoked. "The logic of FOIA mandates that where information requested is truly public, then enforcement of an exemption cannot fulfill its purposes." *Cottone v. Reno*, 193 F.3d 550, 554 (D.C. Cir. 1999) (internal citations and quotations omitted); *see also Davis v. U.S. Dep't of Just.,* 968 F.2d 1276,

---

[6] For instance, Plaintiff includes an attachment labeled "Ex. 9 Unreacted 6103 text," ECF No. 98-9, which links to a copy of Document 12. However, there are no IRS Exemption 3 redactions claimed in Document 12.

1279 (D.C. Cir. 1992) ("[T]he government cannot rely on an otherwise valid exemption claim to justify withholding information that has been 'officially acknowledged' or is in the 'public domain.'").  Of course, this makes for a curious tension: "if a [FOIA] requester can establish that the information he seeks is 'freely available, there would be no reason to invoke the FOIA to obtain access to the information.'"  *Davis*, 968 F.2d at 1279–1280 (quoting *U.S. Dep't of Just. v. Reps. Comm. for Freedom of the Press,* 489 U.S. 749, 764 (1989)).  But, as courts have routinely held, "a FOIA requester is nonetheless free to press the point."  *Jud. Watch, Inc. v. U.S. Dep't of Def.*, 963 F. Supp. 2d 6, 12 (D.D.C. 2013); *see also Niagara Mohawk Power Corp. v. U.S. Dep't of Energy*, 169 F.3d 16, 19 (D.C. Cir. 1999) ("[Plaintiff's] position here is a little odd: if the information is publicly available, one wonders, why is [Plaintiff] burning up counsel fees to obtain it under FOIA?  But the logic of FOIA compels the result: if identical information is truly public, then enforcement of an exemption cannot fulfill its purposes.").  For a plaintiff to succeed in making this showing, he "must bear the initial burden of pointing to specific information in the public domain that appears to duplicate that being withheld."  *Afshar v. Dep't of State*, 702 F.2d 1125, 1130 (D.C. Cir. 1983).

Here, the Court cannot conclude that the information withheld in Documents 3–7 and 29–30 is "truly public," despite Plaintiff's impassioned statements to the contrary.  Plaintiff unfortunately does not provide the requisite detail about when each one of these documents was allegedly disclosed publicly, so the Court is unable to verify that this information was in the public domain at the time the IRS made its redaction determinations.  It appears that for at least some of the documents, Plaintiff is referring to disclosures by the IRS, to Mr. Stonehill's counsel specifically, as part of discovery in the Rule 60(b)(6) proceeding.  But as Plaintiff knows from prior FOIA litigation against the IRS, "[t]he FOIA disclosure regime . . . is distinct from civil

discovery." *Stonehill v. I.R.S.*, 558 F.3d 534, 538 (D.C. Cir. 2009). "While information disclosed during discovery is limited to the parties . . . when a document must be disclosed under FOIA, it must be disclosed to the general public." *Id.* at 538–39; *see also Corley v. Holder*, No. 14-cv-2157 (EGS), 2016 WL 11718421, at *7 (D.D.C. Mar. 30, 2016) ("[D]isclosures made to a party during discovery in a criminal or civil proceeding are immaterial to the FOIA analysis."), *aff'd sub nom. Corley v. Dep't of Just.*, 998 F.3d 981 (D.C. Cir. 2021). Thus, even if the IRS had produced unredacted versions of Documents 3–7 or 28–29 to Plaintiff in a prior proceeding as part of civil discovery, that is insufficient to show this Court that the documents are in the public domain. And to the extent Plaintiff states that the IRS previously produced certain unredacted documents in a prior FOIA matters, Pl.'s Mot. at 9, Plaintiff fails to identify *which* documents he is referring to. *See* CIA Reply at 3 ("[T]he Agency and the Court are left to guess which records containing the IRS's Exemption 3 withholdings in this case are among the 'many' supposed records disclosed in that other [FOIA] litigation."). This conclusory statement by Plaintiff is insufficient to overcome the IRS's seemingly valid invocation of Exemption 3.[7]

Furthermore, Plaintiff appears to object to the fact that the IRS is asserting § 6103 redactions to documents now, even though in the Rule 60(b)(6) proceeding, the IRS allegedly made no such redactions. Pl.'s Reply at 2–3 (stating that the IRS "did not assert 6103 as a basis for redacting information that it now claims is protected in Documents 3, 4, 5, 6, 7 and 30"). The Court construes Plaintiff's argument as a "waiver" argument: that new privilege assertions are impermissible because the government waived those claims by failing to raise them in the Rule

---

[7] In Plaintiff's reply, he directs the Court to a page of an exhibit attached to his Motion, ECF No. 94-4, which he claims has a Bates number "made by the IRS in the Stonehill FOIA administrative proceeding." Pl.'s Reply at 6. The Court believes that Plaintiff has misidentified the exhibit and intended to refer to ECF No. 94-1, which is Document 3 (identical to Document 30) and contains the Bates number to which Plaintiff refers. The Court addresses the unique posture of these documents *infra*.

60(b)(6) proceeding.  But this argument fails, as it has in prior Stonehill-related FOIA cases: there is "no authority supporting the somewhat illogical position that the government has waived FOIA exemption claims because it failed to raise them in earlier non-FOIA proceedings."  *Stonehill v. I.R.S.*, 534 F. Supp. 2d 1, 10 (D.D.C. 2008), *aff'd*, 558 F.3d 534 (D.C. Cir. 2009).

Documents 3 and 30, which are duplicates of one another, merit special attention.  It appears that Plaintiff has now made this document public without IRS § 6103 redactions.  Pl.'s Mot. Ex. 1, ECF No. 94-1.  As explained *supra*, if a document is public, the basis for the claimed FOIA exemption dissipates.  But here, at the time the document productions were made (and at the time the CIA filed its renewed motion for summary judgment), it is not clear to the Court that this document, without § 6103 redactions, was already public.[8]  So, the Court cannot conclude that the "public domain" exception applied when the agencies made their withholding decisions.  What's more, Plaintiff fails to engage with IRS's argument that disclosing these identities would subject the IRS to legal liability.  *See* CIA Mot. at 8 ("[T]he IRS is unable to make a voluntary disclosure of tax return information because doing so would subject its FOIA processors to potential criminal charges and dismissal from their jobs, 26 U.S.C. § 7213(a)(1), and would subject the United States to potential civil liability, 26 U.S.C. § 7431.").  The Court will therefore not order the agencies to go back and reprocess these two identical documents.

---

[8] Though Plaintiff gestures to the Bates numbers on Document 30 as proof that the IRS released this document in full in a prior FOIA case (thus rendering it already public), Pl.'s Reply at 6, he then reverses course, stating that this document was "produced by the IRS *during the Rule 60(b)(6)* proceedings without IRS 6103 redactions."  Pl.'s Reply at 7 (emphasis added).  So, this appears to simply be an example of a document produced by the IRS in civil discovery, not in response to a FOIA request.  Plaintiff's briefing and accompanying exhibits are therefore insufficient to show that the IRS has previously released these materials unredacted in a prior FOIA case.

The Court will grant summary judgment to the CIA as it pertains to the IRS's referral and claimed redactions under Exemption 3 in Documents 3–7 and Documents 29–30, finding that the agencies have sufficiently supported the claimed redactions.

### C. FBI Withholdings Pursuant to Exemptions 6, 7(C), and 7(D): Document 26

Plaintiff "has no objection to the FBI or CIA redactions in Documents 19, 21, 22, 27, 28 or the FBI redactions on Document 12 at p. 9." Pl.'s Mot. at 10. Thus, Plaintiff's challenge to the use of Exemptions 6, 7(C), and 7(D) narrow in on one document: Document 26, a three-page memo dated January 13, 1959. The CIA, based on the FBI's request, redacted certain information on all three pages of Document 26 under Exemptions 6 and 7(C), and on one page under Exception 7(D). Specifically, the FBI redacted names and identifying information of "third parties of investigative interest" under Exemptions 6 and 7(C), and foreign government agency information provided under an implied assurance of confidentially under Exemption 7(D). Reply at 5.

Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes," to the extent that disclosure would cause any of the harms enumerated in Exemption 7's subsections. *Lenz I* at *13 (citing 5 U.S.C. § 552(b)(7)). Specifically, Exemption 7(C) exempts information from disclosure "to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." *Id.* (quoting 5 U.S.C. § 552(b)(7)(C)).[9] Exemption 7(C) also requires courts to balance privacy interests against the public interest in disclosure. *Reps. Comm.*, 489 U.S. at 776. Separately, Exemption 7(D) protects from disclosure records or information that "could reasonably be expected to disclose the identity of a confidential source . . . [who] furnished

---

[9] Exemption 7(C) "establishes a lower bar for withholding material" than Exemption 6, meaning that information properly withheld under Exemption 6 is properly withheld under Exemption 7, so the Court will focus only on the FBI's use of Exemption 7 here. *ACLU v. U.S. Dep't of Justice*, 655 F.3d 1, 6 (D.C. Cir. 2011).

information on a confidential basis." 5 U.S.C. § 552(b)(7)(D). "A source is confidential within the meaning of 7(D) if the source provided information under an express assurance of confidentiality or in circumstances from which such an assurance could reasonably be inferred." *Williams v. FBI*, 69 F.3d 1155, 1159 (D.C. Cir. 1995) (citing *U.S. Dep't of Just. v. Landano*, 508 U.S. 165, 172 (1993)).

Plaintiff contends that the FBI's redactions in Document 26 apply to a specific third-party, and that the suspected third-party has no privacy interests. Specifically, Plaintiff speculates that the information redacted by the FBI concerns a deceased individual named Domasco Nocon, whose name appears unredacted in other records, and who Plaintiff argues enjoys no privacy interests as he is deceased. Pl.'s Mot. at 10–11. Plaintiff does not disaggregate whether his objection is to the FBI's use of Exemption 7(C) or 7(D). *See id.* In response, the CIA states that "[t]he FBI will neither confirm nor deny the identity" of the person, "as doing so would obliterate the purpose of FOIA's privacy exemptions in the first place." Reply at 5.

The Court agrees with the CIA. Plaintiff's assertion that the protected name is Domasco Nocon is just a hunch. It would be a gaping loophole in the FOIA privacy protections if a FOIA litigant could gain access to a redacted name by a lucky guess, and the Court will not facilitate the creation of such a loophole.[10]

---

[10] In any event, regarding Exemption 7(C), individuals have at least some privacy interest in avoiding having their names be disclosed as potential subjects of an FBI investigation even after their death. *Mobley v. Cent. Intel. Agency*, 924 F. Supp. 2d 24, 71 (D.D.C. 2013) (Howell, J.) ("[I]t is still reasonable to conclude that even merely releasing the deceased officer's identity would impose some unwarranted invasion of personal privacy upon the deceased officer's close relatives" and "the Court holds that the FBI properly withheld the identity of the deceased foreign law enforcement officer under FOIA Exemption 7(C)"). And regarding Exemption 7(D), "[t]he inquiry . . . is whether a source was given an express or implied assurance of confidentiality and . . . nothing . . . suggests that a promise of confidentiality expires upon a person's death." *Blanton v. Dep't of Just.*, 63 F. Supp. 2d 35, 49 (D.D.C. 1999) (Friedman, J.).

In his Reply, Plaintiff tries a different tack—that "[r]egardless of whether it is Nocon's name that has been redacted, the CIA has not identified any cognizable privacy invasion of either NBI agents or U.S. Government agent other than the bare conclusory assessments that 'Document No. 26 moniker concerns an individual's status as a potential agent of a foreign principal." Pl.'s Reply at 13 (quoting CIA Reply at 6). But the CIA's justification is not a "bare conclusory assessment," as Plaintiff characterizes it. Rather, it is a statement, made under a sworn declaration, relaying the nature of redacted information that implicates an individual's serious privacy interests about their sensitive confidential status. And in any event, "[a]rguments raised for the first time in a reply brief are waived." *Nippon Shinyaku Co., Ltd. v. Iancu*, 369 F. Supp. 3d 226, 239 n.8 (D.D.C. 2019). Plaintiff's Hail-Mary challenge to the redactions in Document 26 are unconvincing, and the Court will grant summary judgment in the CIA's favor.

### D. Segregability

The FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such a record after deletion of the portions which are exempt under this subsection." 5 U.S.C. 552(b). This "segregability" requirement means that any "non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Mead Data Cent. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977). "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material." *Sussman*, 494 F.3d at 1117 (citing *Boyd v. Crim. Div. of U.S. Dep't of Just.*, 475 F.3d 381, 391 (D.C. Cir. 2007)). Yet, "agencies must still demonstrate with 'reasonable specificity' the bases for their conclusions regarding segregability." *Khatchadourian*, 453 F. Supp. 3d at 81. Here, Plaintiff does not contest that the CIA has performed a reasonable segregability analysis. Pl.'s Mot. at 17. The Court is satisfied with the agencies' respective

declarations that they released all non-exempt information, as is further supported by the fact that all thirty-six documents were at least released in part. *See* CIA Decl. ¶ 23; Second Decl. of Michael Seidel, FBI Chief of the Record and Information Dissemination Section, CIA Mot. Ex. 2 ¶ 50, ECF No. 92-2; Second Decl. of Vikramsing R. Barad, IRS Senior Technician Reviewer, CIA Mot. Ex. 3. ¶ 8, ECF No. 92-3.

## IV.   CONCLUSION

Based on the foregoing, the Court will **GRANT** the CIA's Motion for Summary Judgment [ECF No. 92] and will **DENY** Plaintiff's Motion [ECF No. 94-9].


A separate Order consistent with this Memorandum Opinion shall issue.


Date: August ___, 2025

Hon. Royce C. Lamberth
United States District Judge

21