**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

PATRICK LENZ, Co-Executor of the Estate of Harry S. Stonehill,

*Plaintiff,*

v.

CENTRAL INTELLIGENCE AGENCY,

*Defendant.*

**Case No. 1:20-CV-3327-RCL**

## MEMORANDUM OPINION

In 2018, Pauline D. Stonehill, then acting as co-executor and co-administrator of the Estate of her late husband, Harry S. Stonehill, submitted a Freedom of Information Act ("FOIA") to the Central Intelligence Agency ("CIA"). Compl., ECF No. 1. When the CIA failed to respond to her request, she brought the present suit. *Id.*

This Court resolved an initial round of cross-motions for summary judgment in September 2024. *Lenz v. Cent. Intel. Agency*, No. 1:20-cv-3327, 2024 WL 4346263 (D.D.C. Sept. 30, 2024) (*Lenz I*). The Court granted the CIA's invocation of *Glomar* to a number of Plaintiff's requests but otherwise denied the CIA's motion, ordering the agency to re-run its production of documents and update its *Vaughn* index to justify any remaining redactions. *Id.* After the agency made additional disclosures, the Court resolved a final round of cross-motions for summary judgment in August 2025. *Lenz*, 2025 WL 2390005 (*Lenz II*). The Court granted the CIA's motion and denied Plaintiff's, concluding the case. *Id.*

Now before the Court is Lenz's Motion for Attorney's Fees and Costs. Mot. For Atty.'s Fees and Costs ("Pl.'s Mot."), ECF No. 103. For the reasons contained herein, the Court will grant Lenz's Motion for Attorney's Fees.

## I. BACKGROUND

The history of the Stonehill raids and their aftermath is comprehensively addressed in this Court's previous opinions. *See Lenz I*, *1–2. This opinion therefore assumes familiarity with the factual background and provides only the facts necessary for resolving the instant motion.

Mr. Stonehill owned businesses in the Philippines which were raided by the Philippine National Bureau of Investigation on March 3, 1962. *Lenz II* at *1. U.S. authorities later used records obtained during the raids to win a tax judgement against Stonehill. *Id.* Since then, the Stonehill family has attempted to challenge that tax judgment, but the challenges have ultimately failed. *United States v. Est. of Stonehill*, 660 F.3d 415, 417 (9th Cir. 2011). Key to his arguments in that case was the allegation that the United States had participated in the raid and therefore violated his rights under the Fourth Amendment. *See id.* After Mr. Stonehill's death, his family has submitted numerous FOIA requests seeking information that would implicate the U.S. government in the raids. This is one of those cases.

Mrs. Stonehill, the co-executor and co-administrator of Mr. Stonehill's estate submitted a FOIA request to the CIA in 2018.[1] She brought the present action to compel disclosure in 2020 because the agency did not respond. The CIA then identified thirty-six responsive documents, releasing two in part and the remaining thirty-four in full. *Lenz II* at *1. Eventually, the CIA asserted a *Glomar* response to a portion of the FOIA request. *Id.* Plaintiff disputed the agency's withholdings and parties filed cross-motions for summary judgment, which this Court resolved in September 2024. *Id.* at *2.

In its September 2024 Order, the Court granted the CIA's motion with respect to its *Glomar* responses but denied summary judgment on the remaining issues. *Id.* The Court ordered the CIA

[1] Dr. Patrick Lenz was substituted as the named plaintiff after Mrs. Stonehill's death. ECF No. 68.

to produce a number of withheld documents with updated *Vaughn* indexes. *Id.* Afterward, the agency made a relatively comprehensive production, releasing eight documents without any redactions and releasing the remaining twenty-eight documents in part. *Id.* Plaintiff continued to dispute remaining withholdings, and the CIA renewed its motion for summary judgment in January 2025. *Id.* The Court granted that motion. *Id.* at *9.

Plaintiff now seeks to recover attorney's fees for time spent on the litigation. The motion is ripe for review.

## II. LEGAL STANDARD

The FOIA provides that a court "*may* assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). Put another way, a FOIA plaintiff must substantially prevail to be *eligible* for attorney's fees. The court may then determine whether they are *entitled* to fees.

A plaintiff has substantially prevailed, and is therefore eligible to receive attorney's fees, if they have "obtained relief through either (I) a judicial order, or an enforceable written agreement or consent decree; or (II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." *Id.*

To determine whether a plaintiff who is eligible to receive attorney's fees is entitled to them, a court considers "(1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the agency's withholding of the requested documents." *Kwoka v. Internal Revenue Serv.*, 989 F.3d 1058, 1063–64 (D.C. Cir. 2021) (quoting *Morley v. Cent. Intel. Agency*, 810 F.3d 841, 842 (D.C. Cir. 2016) (internal quotation marks omitted)).

# III. ANALYSIS

## A. Eligibility For Attorney's Fees

Parties do not dispute that Plaintiff is eligible to receive attorney's fees. *See* Mem. In Opp'n to Mot. For Att'y's Fees and Costs ("CIA Mot."), ECF No. 111 at 7 n.2 ("Defendant does not challenge that Plaintiff is eligible for fees in this Opposition in light of the Estate's partial success."). Plaintiff's suit was the catalyst for the CIA releasing certain documents, as indicated by their release of documents and "significant change from the[ir] original blanket withholdings" in response to this Court's orders. *Lenz II* at *2; *see also Lenz I*, at *15 (ordering updated *Vaughn* indexes or production of documents in full). In other words, Plaintiff's lawsuit "substantially caused the government to release the requested documents before final judgment." *Grand Canyon Tr. v. Bernhardt*, 947 F.3d 94, 96 (D.C. Cir. 2020) (quoting *Brayton v. Off. of the U.S. Trade Representative*, 641 F.3d 521, 524 (D.C. Cir. 2011) (internal quotation marks omitted).

Accordingly, Plaintiff is eligible for attorney's fees.

## B. Entitlement to Attorney's Fees

To determine entitlement to attorney's fees, the Court considers "(1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the agency's withholding of the requested documents." *Kwoka*, 989 F.3d at 1063–64. (quoting *Morley*, 810 F.3d at 842) (internal quotation marks omitted).

### 1. Public Benefit

"[T]he public-benefit factor requires an *ex ante* assessment of the potential public value of the information requested, with little or no regard to whether any documents supplied prove to advance the public interest." *Morley*, 810 F.3d at 844. Therefore, "if [it is] plausible *ex ante* that

a request has a decent chance of yielding a public benefit, the public-benefit analysis ends there." *Id.* Courts in this Circuit have focused on whether "the lawsuit 'is likely to add to the fund of information that citizens may use in making vital political choices." *Hall & Assocs. v. U.S. Env't Prot. Agency*, 703 F. Supp. 3d 62, 77 (D.D.C. 2023) (quoting *Davy v. Cent. Intel. Agency*, 550 F.3d 1155, 1164 (D.C. Cir. 2008) (Tatel, J., concurring)).

Plaintiff claims that this factor weighs in his favor because of media attention that has resulted from this lawsuit. *See* Pl.'s Mot. at 19–23. Plaintiff contends that the "information sought involves possible questions about the government's integrity that affect public confidence," *id.* at 18, because "the Government's use of the IRS and other Federal agencies as a means of achieving political goals" has been "a topic of great public interest for many years," *id.* at 20.

Defendant counters that there was no public benefit to be derived from the information for two reasons. First, Defendant claims that Americans are unlikely to make any political choice today based on information about the raid, which occurred during the 1960s. CIA Mot. at 9. In Defendant's telling, the media attention that the litigation has received is due not to the importance of the information sought, but instead to the absurdity of litigating over the "minutia related to [the] raids." *Id.* at 16. Second, Defendant argues that this FOIA action could not have been anticipated to add "to the information already available about the Stonehill raids" considering related litigation pursued by Plaintiff. *Id.* at 19–20.

Ultimately, Plaintiff has the better of these arguments. Defendant's first argument misses the mark. Courts in this circuit have indicated that news reporting is relevant to assessing public interest in requested information. *See Jud. Watch v. U.S. Dep't of Just.*, No. 1:24-cv-700, 2026 WL 764540, at *15 (D.D.C. Mar. 18, 2026). Though Defendant is correct that the Forbes article strikes a bewildered tone with respect to the FOIA litigation, the article does comment on matters

of public interest that could inform political choices by making specific reference to the Stonehill case. It reads: "There is something wrong with having tax enforcement being a tool that is used for other ends, which is pretty clearly what was going on in Stonehill's case. It is neither the first nor last time that it has happened…" Peter J. Reilly, *US V. Harry Stonehill—America's Jarndyce V. Jarndyce*, Forbes (Feb. 20, 2022), https://www.forbes.com/sites/peterjreilly/2022/02/20/us-v-harry-stonehillamericas-jarndyce-v-jarndyce/ [https://perma.cc/F4AX-MVP5]. The article demonstrates more, therefore, than "public interest in a general topic related to the FOIA request." CIA Mot. at 15.

Defendant plays down media interest in the case by pointing out that "reporters do not appear to have been interested in this request in particular." CIA Mot. at 20. Even assuming that Defendant is correct, this FOIA request could still have been anticipated to produce information that speaks to an ongoing interest in the Government's use of tax authorities to which the Stonehill saga is relevant. And that persistent interest undermines Defendant's argument that the passage of time since the raids has nullified their relevance. *See* CIA Mot. at 9.

Defendant's second argument is likewise unpersuasive. Though Defendant argues that "Plaintiff offers no explanation why the estate expected anything new to come out of this FOIA request," CIA Mot. at 14, Defendant also concedes that new information was, in fact, produced by arguing that "Plaintiff fails to explain why this additional bit of information would be useful to the public when making political choices," *id.*

Defendant slightly misstates the inquiry. To prevail, Plaintiff need show that there was an *ex ante* possibility that "a request has a decent chance of yielding a public benefit." *Morley*, 810 F.3d at 844. Even if Plaintiff had no expectation that the request would produce new information (which is undercut by Defendant's concession that new information was, in fact, produced), there

is a plausible public benefit to a confirmation that the CIA possesses no additional information related to the Stonehill raids. *See Gov't Accountability Proj. v. U.S. Dep't of Homeland Sec.*, No. 17-cv-2518, 2020 WL 4931932, at *1 (D.D.C. June 2, 2020) ("[W]hile the absence of records certainly lessens any public benefit, it does not eliminate the potential for public good altogether.").

Though not overwhelming, the public benefit factor accordingly weighs in favor of awarding attorney's fees.

2. Commercial Benefit to Plaintiff & Nature of Interest

"The commercial benefit and nature of interest factors are closely related and often considered together to help the court distinguish between requesters seeking documents for public informational purposes versus private gain." *Leopold v. U.S. Secret Serv.*, No. 22-cv-1923, 2025 WL 2177912, at *4 (D.D.C. Aug. 1, 2025) (citing *Davy*, 550 F.3d at 1160).

Plaintiff's counsel relies heavily on the fact that they have represented Mr. Stonehill and his estate pro bono and that there is no financial benefit to this litigation for the Stonehill estate. *See* Pl.'s Mot. at 24. Defendant argues that the Stonehill estate has a strong private interest in the case because they are seeking "to vindicate—even if only morally—Stonehill's long-stated argument that the criminal prosecution and civil tax case should have been thrown out because the American Government used the National Bureau of Investigation to conduct a warrantless search and seizure on its behalf." CIA Mot. at 22. Defendant further argues that Plaintiff's counsel's focus on the pro bono nature of their representation is misplaced because the relevant inquiry must focus on the plaintiff rather than their counsel. *Id.* at 25.

These two factors favor Plaintiff, but just slightly. Though the Stonehill estate may have a private incentive to discover information that tends to clear Mr. Stonehill's name, Defendant does not meaningfully dispute that Plaintiff's counsel would not have been incentivized to pursue the

case pro bono without the prospect of attorney's fees. Courts in this circuit favor attorney's fees in FOIA cases for counsel who represent a client pro bono when the request "benefits others." *Reyes v. U.S. Nat'l Archives and Recs. Admin.*, 356 F. Supp. 3d 155, 162 (D.D.C. 2018); *see also Hall*, 703 F. Supp. 3d at 82 ("Factors 2 and 3 are, at times, accorded less weight when a case is brought pro bono, even for a private interest.").

Defendant distinguishes *Reyes* by arguing that the plaintiff's motives in that case "'were not purely personal' because the information made available was also relevant to" other veterans. CIA Mot. at 20 (quoting *Reyes*, 356 F. Supp. 3d at 166). But that distinction is not persuasive. In *Reyes*, the plaintiff's FOIA request "was initiated, in part, as a substitute for discovery in her veterans' benefits appeal," and the court found that her "motives were commercial and personal." *Reyes*, 356 F. Supp. 3d at 165.

True, the benefit to others in *Reyes* was more clearly defined and specific than that at issue here. In *Reyes*, the request sought "to determine which agencies had knowledge of an Army Report discussing the difficulties faced by many World War II Filipino guerilla fighters, especially female fighters, in obtaining formal recognition of their service" which had consequences for their eligibility for a compensation fund established by Congress. *Id.* at 164. But the personal benefit to the plaintiff was correspondingly concrete. *See id.* at 165.

Defendant does not point to any similarly concrete motive in this case, instead resorting to speculation about counsel's motives. Defendant writes: "[I]t beggars belief that Plaintiff's counsel has given the past three decades of his life to litigating for Stonehill and the estate because one day he might, perhaps, receive FOIA attorney's fees." CIA Mot. at 27. Defendant further argues that Plaintiff's counsel had previously won "$250,000 in attorney's fees using information developed from the estate's lawsuits" and that Plaintiff may be "seeking this information because they may

hope it gives them ammunition to return to court and obtain further damages or fees." *Id.* at 27. Though Plaintiff disputes whether attorney's fees were awarded in that case, *see* Plaintiff's Reply ("Pl.'s Reply), ECF No. 112 at 7, it is immaterial. Defendant's speculation about counsel's motives and future, unspecified litigation is unpersuasive.

Accordingly, factors two and three weigh in favor of awarding attorney's fees.

3. Reasonableness of Withholding

Finally, the Court considers whether the "agency's opposition to disclosure 'had a reasonable basis in law.'" *Davy*, 550 F.3d at 1162. "If the agency's decision to withhold the records was 'correct as a matter of law, that will be dispositive'; if the agency's position 'is founded on a colorable basis in law, that will be weighed along with other relevant considerations in the entitlement calculus.'" *Judicial Watch*, 2026 WL 764540, at *16 (quoting *Davy*, 550 F.3d at 1162).

Defendant apparently concedes that much of its withholding was unreasonable, writing: "Defendant does not argue in this motion that its withholding had a reasonable basis in law." CIA Mot. at 27. And this factor considers whether the agency "had not been recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior." *Davy*, 550 F.3d at 1162 (quoting *LaSalle Extension University v. Fed. Tr. Comm.*, 627 F.2d 481, 486 (D.C. Cir. 1980). The CIA has engaged in such behavior, producing responsive documents after this Court found that the initial blanket withholding suggested "that the CIA [had] not taken its disclosure obligation seriously." *Lenz I* at *9. Accordingly, this factor weighs in favor of awarding fees.[2]

[2] The CIA urges this court to consider its success in asserting *Glomar* responses. The court does so when discussing the reasonableness of Plaintiff's fee request.

4. Balancing

In sum, the first and fourth factors favor attorney's fees the second and third are inconclusive. Balancing these factors compels the conclusion that Plaintiff has demonstrated that they are entitled to an award of fees.

**C. Reasonableness of Fees**

Plaintiff requests $67,488 in fees. Pl.'s Mot. at 29. The Court must determine whether this request is reasonable. *See* 5 U.S.C. § 552(a)(4)(E)(i).

Defendant "does not dispute that Plaintiff's rate is reasonable." CIA Mot. at 29. Instead, Defendant argues that the fee calculation is unreasonable because it includes (1) time spent challenging Defendant's *Glomar* response on which Defendant ultimately prevailed and (2) time spent reviewing and discussing redactions. When considering the reasonableness of a fee award, "[t]he degree of [P]laintiff's success is the 'most critical factor . . .'" *People for the Ethical Treatment of Animals v. Nat'l Institutes of Health*, 130 F. Supp. 3d 156, 166–67 (D.D.C. 2015) (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)).

1. *Glomar*

Defendant asks that the Court to "take into account that Defendant indisputably had a reasonable basis in law" for asserting "*Glomar* responses to four of the nine parts of the request, as well as with its subsequent redactions." *Id.* at 27. Indeed, the Court granted summary judgment to Defendant on its *Glomar* response to "items 2, 4, 6, and 9 of Plaintiff's FOIA request." *Lenz II*, at *6.

Though it would be appropriate to reduce the fee award under these circumstances, *see PETA*, 130 F. Supp. at 166–67 (reducing fee award based in part on a successful *Glomar* response), the Court need not do so here. Plaintiff's time sheet indicates that counsel dedicated 4.5 hours to

"Research re Glomar response" and 7.2 hours to "Finalize arguments re Glomar- Exemptions 1, 6103 and FBI Exemptions." Pl.'s Mot. Ex. 5. Defendant's request that fees be reduced by 6 hours total is accordingly reasonable. But Plaintiff has already reduced their fees by 10% (seeking 96 hours rather than 106.75 hours) because some of the work could have been performed by an associate. Pl.'s Mot. at 26. Accordingly, deducting 6 hours would result in a fee of $70,827.25, but Plaintiff has only claimed $67,488. Therefore, the dispute on this point is moot.

2. Review of Responsive Documents

Second, Defendant argues that the fees should be further reduced by the hours billed for reviewing and discussing redactions "after Plaintiff received the order that Plaintiff saw as guaranteeing entitlement." CIA Mot. at 29. Because "reviewing records is the goal of the FOIA request," Defendant argues that such hours are not compensable. *Id.* (citing *Louise Trauma Ctr. LLC v. Wolf*, No. 20-cv-2348, 2024 WL 4227617, at *5 (D.D.C. Sept. 18, 2024). Plaintiff argues that they are entitled to fees for reviewing records produced by the CIA because the released documents were "being reviewed to evaluate the sufficiency of the release or the propriety of a specific withholding so that the attorney can then challenge the release or withholding." *Elec. Privacy Info. Ctr. v. Fed. Bureau of Investigation*, 80 F. Supp. 3d 149, 160 (D.D.C. 2015); *see also* Pl.'s Mot. at 29.

Each of the parties' arguments has merit. Defendant is correct that "[g]enerally, plaintiffs should not recover fees for time spent reviewing responsive documents, because the lawyers would have performed that task even in the absence of litigation." *Urb. Air Initiative, Inc. v. Env. Protection Agency*, 442 F. Supp. 3d 301, 325 (D.D.C. 2020). Plaintiff is correct that some district courts have awarded fees for such review. *See Elec. Privacy Info. Ctr.*, 80 F. Supp. 3d at 160.

But the cases in which courts have awarded fees for reviewing documents are generally those in which the requesting party obtained further relief after reviewing the responsive documents. *See, e.g., id.* at 160 ("The time EPIC attorneys spent reviewing the released documents was an integral part of this FOIA litigation and crucial to EPIC's success in the litigation."); *Urb. Air Initiative*, 442 F. Supp. 3d at 325 (finding that "document review was, in part, a necessary aspect of the litigation" because the defendant did not prevail on a summary judgment motion for which the documents were reviewed); *WP Co. LLC. v. U.S. Small Bus. Admin.*, 514 F. Supp. 3d 267, 278 (D.D.C. 2021) (awarding fees for reviewing responsive documents because it was immediately apparent that "the release did not contain certain categories of Plaintiffs' requested information").

Here, on the other hand, Plaintiff did not prevail in challenging any further withholdings as a result of the time billed for reviewing the redacted documents. *See Lenz II*, at *9. Still, "[t]he Court has considerable discretion in awarding attorney['s] fees. *Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 218 F. Supp. 3d 27, 47 (D.D.C. 2016); *see also Elec. Privacy Info. Ctr. v. U.S. Drug Enf't Admin.*, 266 F. Supp. 3d 162, 167 (D.D.C. 2017) (noting that "[w]hile precedent can be a helpful guide" in assessing the reasonability of a fee award, the D.C. Circuit "asks that judges simply 'exercise their discretion as conscientiously as possible . . ." (quoting *Copeland v. Marshall*, 641 F.2d 880, 893 (D.C. Cir. 1980) (en banc))).

Though Plaintiff obtained no further relief after reviewing documents produced after the Court's first summary judgment order, *see Lenz II*, at *9, the CIA's response to his initial requests and this litigation has been subpar, *see Lenz II*, at *2 (denying summary judgment to the CIA after "discovering that nineteen documents that the CIA had identified as responsive but had withheld in full . . . were *already public* . . . a fact with the CIA failed to engage with or even acknowledge");

*see also Lenz I*, at *9 ("[T]he CIA's blanket withholding of public documents, and its failure to respond to Plaintiff's identification of this fact, demonstrates that the CIA has not taken its disclosure obligation seriously . . . .").

In this case, then, Plaintiff had compelling reasons to scrutinize the CIA's disclosures to ensure that it was not continuing to behave in an improper fashion. Therefore, these special circumstances lead the Court to conclude that reviewing documents produced after this Court's 2024 opinion was necessary "to ensure the agency's compliance with FOIA and the Court's . . . Order" and are accordingly compensable. *Elec. Privacy Info. Ctr. v. Fed. Bureau of Investigation*, 72 F. Supp. 3d 338, 351 (D.D.C. 2014).

But the Court will reduce the fee award to account for Plaintiff's ultimate failure to obtain further relief. Defendant proposes a 30-hour reduction for review of documents after the Court's initial summary judgment opinion, CIA Mot. at 31, despite recognizing that Plaintiff's time sheet would require a deduction of 38 hours if all fees related to review of released documents were excluded, *id.* at 30; *see also* Pl.'s Mot. Ex. 5. All told, the Court believes that a 15 hour reduction is appropriate.

Accordingly, the Court will order the CIA to pay Plaintiff for 81 hours in fees at the undisputed rate of $703/hour, resulting in a total of $56,943. Defendant does not address Plaintiff's request for $300 in costs, so the Court will award those as well.

## IV. CONCLUSION

Based on the foregoing, the Court will grant Plaintiff's motion attorney's fees [ECF No. 103]. Pursuant to 5 U.S.C. § 552(a)(4)(E), the Court will order the Central Intelligence Agency to pay the estate of Harry S. Stonehill $56,943 in attorney's fees and $300 in costs.

A separate Order consistent with this Memorandum Opinion shall issue.

Date: 11 September, 2026

Royce C. Lamberth
United States District Judge